Ovna WEATHERRED et al., Appellants,

v.

George D. KIKER et al., Appellees.

No. 7145.

Court of Civil Appeals of Texas.

Amarillo.

April 16, 1962.

Rehearing Denied May 14, 1962.

Ed Hoover, Jr., Canadian, for appellants.

Crow & Crow, Wm. J. Jackson, Canadian, for appellees.

CHAPMAN, Justice.

This is an appeal by Ovna Weatherred, surviving wife of Marcus B. Weatherred and the children of that union, all daughters, joined pro-forma by their husbands, from an instructed verdict in a trespass to try title case styled Ovna Weatherred et al. v. George D. Kiker et al. Mr. Weatherred in the record is variously referred to as M. B. Weatherred, Marcus B. Weatherred, Marcus Bate Weatherred, and Marcus Bates Weatherred.

These same parties were before us in Kiker, Administrator of the Estate of

F. B. McComb v. Perkins et al., Tex.Civ. App., 338 S.W.2d 538. In that case we sustained the trial court's injunctive relief granted appellees there, the Weatherred family, to preserve the status quo until a final determination of the title to the land involved could be adjudicated. Appellee Kiker, appellant in the previous hearing before us, was in that case seeking to sell the interest claimed by the Weatherred family to satisfy claims against the estate of F. B. McComb, the record owner at that time of all the surface and one-half the minerals of the quarter section of land in the controversy. In that proceeding by sworn pleadings Ruth Weatherred Perkins was alleged to be administratrix of the Marcus B. Weatherred estate. It now develops by the pleadings in this case that "the said Marcus B. Weatherred died on April 4, 1954 without leaving a will and no administration was had on his estate nor was there a necessity for same."

In this case it was alleged that Ovna Weatherred owned a community one-half interest in the land and that her children inherited their father's one-half interest upon his death intestate. The Original Petition was verified and alleged that F. B. McComb, in whom the superior record title was vested, had no heirs of his estate and was divorced at the time he entered the State Hospital at Abilene. Then by an instrument called the Plaintiffs' Amended Petition Ovna Weatherred alleged that F. C. McComb "was at such time married at the time of his admission to State Hospital." He died intestate in the hospital in March, 1949, approximately 18 years after he was admitted.

The instant case was prosecuted by appellants on the theory that Marcus B. Weatherred, until his death, owned the property under a quit-claim deed from Weta McKinny and her husband to M. B. Weatherred dated September 27, 1933, and that he in his life time and appellants here established title under the 3, 5, 10, and 25 years Statutes of Limitations. In the pleadings Ruth Weatherred Perkins claim-

ed the property only as an heir of her deceased father. In order to further their proof to that end Ruth Weatherred Perkins at the beginning of the trial attempted to disclaim "all interest in the subject matter that she may have had, as heir and in any and all other capacities, and any interests whatsoever, that she may have owned or claimed in the subject matter of this suit," in order to circumvent the Dead Man's Statute with her testimony. After her testimony, in which she attempted to show limitation title made by her deceased father and his heirs since his death, and after 125 pages of testimony, including that of her mother to the same effect, counsel for appellees introduced a deed executed April 12, 1934 filed of record in Hemphill County, April 14, 1934 showing M. B. Weatherred and wife, Ovna Weatherred for and in consideration of $2400.00 cash, receipt of which was acknowledged, conveyed the property by warranty deed to Ruth Weatherred.

■ Thus, appellants are in the anomalous position of attempting to show title by limitations made by Marcus B. Weatherred under the 3, 5, 10, and 25 years Statutes of Limitations in the face of a warranty deed by him and his wife for valuable consideration conveying the property to his daughter before he had held under any title or color of title even as long as one year. This would immediately eliminate any semblance of limitation title through Marcus B. Weatherred under the 3, 5, and 25 years Statutes of Limitations, all requiring possession to be under a deed or deeds or under an instrument or instruments. Articles 5507, 5508, 5509, and 5519. Nor is there a showing of the necessary conditions required in Article 5519a to prove title by limitation.

■ There is a claim asserted in the case under a purported lost deed from H. B. McComb to Marcus B. Weatherred but the only testimony concerning such purported deed is that it was made in 1930. There is no evidence of probative force showing it to be on this particular property [the

evidence only showing it to be a deed from H. B. McComb] but even if it had been proved and would have proved title to the property in Marcus B. Weatherred it was conveyed away by him in 1934 to his daughter, Ruth Weatherred. Counsel argues by brief that she never accepted the deed but in the Statement of Facts he said: "She had forgotten about the deed * * *" There is no probative evidence in the case that she did not accept the deed. In fact, after it was introduced she never testified any more.

■ The next question with which we are faced is whether Ruth Weatherred Perkins had the legal authority to disclaim any interest she may have had in the property without being joined by her husband, with whom she was living, in the absence of being qualified under Article 4614, Vernon's Tex.Civ.St. or some other statute operating as an exception to Article 1299, V.T.C.S. The last cited article requires that a wife must be joined by her husband in a conveyance of her real property. Though the disclaimer was not a conveyance it had the effect if legal of divesting her of any interest she had in the property in controversy without being qualified under any of the statutory exceptions. It is a unique question and we believe one of first impression. Because of the fact that it would have had the effect of divesting her of any interest she may have had in the separate real property in controversy without being joined by her husband we believe and so hold that the attempted disclaimer was of no effect unless ratified by her husband. There is no probative evidence of his ratification.

Since her father could not have ripened any limitation title before he and her mother deeded the land to her and since he could not have acquired under the 3, 5, and 25 years Statutes of Limitations it only remains for us to decide if the record supports a limitation title by him or by him and his heirs after his death under Article 5510, V.A.C.S., the 10-year limitation statute. There is no pleading of limitation by Ruth Weatherred Perkins except as an heir of her father.

■ We hold the evidence was insufficient to support a limitation title through Marcus B. Weatherred under the statute just mentioned. The evidence most favorable to him was that he went to Hemphill County from his home in Taylor County in 1930, 1935, and in the 40's and 50's. Mrs. Weatherred said she went to see the land in 1957, 1959, and 1960. Since he deeded to his daughter Ruth in April, 1934 the record shows only four visits to Hemphill County by him after he deeded any interest he could have had and three visits by the mother after his death. We believe it takes more than just visits to a county where land is located or visits to the land itself to ripen a limitation title. Our Supreme Court has said: "to constitute adverse possession sufficient to deprive an owner of legal title to his property by an adverse claimant, such possession must be continuous and uninterrupted for the statutory period, and must be 'actual, notorious, distinct and hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant.'" Heard et al. v. State et al., 146 Tex. 139, 204 S.W.2d 344.

That same court in Nona Mills Co. v. Wright et al., 101 Tex. 14, 102 S.W. 1118, 1121 said: "To constitute adverse possession, the party occupying the land must in some way appropriate the land for some purpose to which it is adapted." This land is all in a dry river bed except one acre. There is evidence to the effect that it was suitable only for minerals but there is not any evidence whatever that Mr. Weatherred ever tried to lease it for mineral development or in any manner appropriate it for some purpose for which it was adapted. The evidence shows it would not have been practical to fence the entire quarter section but the record is silent as to any use of the small part not in the river bed by fencing, cultivating, using or enjoying it or using or enjoying any of the other in any manner.

■ Under the 10-year Statute of Limitations it is not a requirement that the adverse claimant pay the taxes but had they been paid for some of the period during which the appellants had attempted to ripen title through Marcus B. Weatherred it would have at least furnished some evidence of an adverse claim. No taxes were paid on the property during his life time.

In Urschel v. Garcia, Tex.Civ.App., 164 S.W.2d 804, (refused W. M.) the adverse claimant when asked what use he made of the property he was claiming by limitation, replied: "at the moment I just had it taking care of it until I could lease it." The Court said: "Such testimony is not sufficient to support a claim of limitation for exclusive and adverse possession, for the burden of proof upon such issue is on the claimant and such proof must be clear and satisfactory." In the instant case we see little more proof, if any, than that shown in the case just cited. In any event, the proof is not satisfactory.

When the deed was introduced from Marcus B. Weatherred and wife to their daughter the trial court immediately instructed a verdict before the appellants rested their case.

■ Appellants recited a point of error in their brief because the court prematurely instructed a verdict before "plaintiff had an opportunity to develop and close their case" but did not carry the point forward by citing evidence of what they could have proved, nor did they cite any cases or make any argument on the point. In fact, they simply cited points 2, 3, 6, 7, 8, 12, 14, and 16 and never pursued any of them any further in their brief. Therefore, we must assume the points were waived. Kelley et ux. v. City of Austin, Tex.Civ.App., 268 S.W.2d 773 (N.W.H.); Amstater et al. v. Andreas, Tex.Civ.App., 273 S.W.2d 95 (N.R.E.); Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197 (Supreme Court); Crowell-Gifford Furniture Company v. Cloutman, Tex.Civ.App., 276 S.W.2d 539

(N.R.E.); Whitson Company, Inc. et al. v. Bluff Creek Oil Company et al., Tex.Civ. App., 278 S.W.2d 339, affirmed 156 Tex. 139, 293 S.W.2d 488.

■ As heretofore stated this is a suit filed in the nature of trespass to try title. The record shows considerable time was consumed in complaining of the weaknesses and defects in the title of appellees. It has many times been held that a person can recover only on the strength of his own title and cannot rely on the weaknesses or defects in the title or proof of defendant. Niendorff et al. v. Wood et al., Tex.Civ. App., 149 S.W.2d 161 (writ refused); Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849 (Supreme Court).

Under the record made in this case we have no alternative except to affirm the judgment of the trial court. Accordingly, the judgment is affirmed.