**HARTFORD FIRE INSURANCE COMPANY, Appellant,**

v.

**Robert G. CHRISTIANSON et ux., Appellees.**

**No. 108.**

Court of Civil Appeals of Texas.

Corpus Christi.

Sept. 9, 1965.

Rehearing Denied Oct. 7, 1965.

Thompson, Coe, Cousins & Irons, R. B. Cousins, Dallas, R. W. Cowart, Bay City, for appellant.

Eli Mayfield, Palacios, Moise Simon, Bay City, Austin Y. Bryan, Jr., Houston, for appellees.

GREEN, Chief Justice.

This is a case arising out of Hurricane Carla. Appellees sued upon an insurance policy generally called a Comprehensive Dwelling Policy, alleging that the dwelling owned and occupied by them as their home, situated near Palacios, Matagorda County, Texas, was totally obliterated as a result of the hurricane and accompanying tornadoes, as were also the household goods contained therein.

As affects this case, the policy in question insured both dwelling and contents against the perils of windstorm and hurricane, but expressly excluded and did not insure against loss caused by tidal wave, high water or overflow, whether driven by wind or not, nor by rain, whether driven by wind or not, unless the wind shall first make an opening in the walls or roof of the described building, and insurer shall then be liable only for loss to the interior of the building, or the insured property therein, caused immediately by rain entering the building through such openings.

Appellant, as defendant below, plead such exclusionary provisions of the policy.

The jury found in answer to special issues numbered as stated (1) that appellees' dwelling house was damaged and destroyed as a direct result of Hurricane Carla; (2) that the dwelling house sustained damage or destruction as a direct result of tornado

winds occurring in the area; (3) that the actual and necessary cost of repairing and replacing the house would be $20,303.00 (4) that the actual cash value of the house before Carla was $20,303.00, and (5) after Carla was none; (6) that appellees' personal property, household goods, and contents contained in the dwelling house were damaged and destroyed as a direct result of Carla; (7) that such personal property, etc. sustained loss and damage as a direct result of tornado winds; (8) that the actual and necessary cost of repairing and replacing such damaged and destroyed personal property was $6,863.00, (13) that no part of any damage to the dwelling house was directly caused by tidal wave, high water, or overflow, whether driven by wind or not; (14) that no part of any damage to the house was directly caused by a combination of the winds of the hurricane and tidal wave, high water, or overflow whether driven by wind or not, or by rain entering the building through openings not

made by the wind; and (15) and (16), the same as (13) and (14) applicable to the household goods of appellees. Other findings were also made, some of which will be discussed under appropriate points of error.

On the basis of the evidence and the verdict, judgment was entered for appellees against appellant, from which appellant has appealed to this court.

Admittedly, the dwelling house and its contents except the concrete foundations were totally destroyed at some time during the passage of Hurricane Carla through this area September 9-12, 1961. We show herewith Plaintiff Exhibit 6, a photograph of the house taken Saturday, September 9, 1961, as appellees were preparing to leave ahead of the oncoming hurricane, and Plaintiff Exhibit 16, a photograph of the site of the same house taken by Mr. Christianson Thursday, September 14, 1961, on his return, to demonstrate the complete destruction.

PLAINTIFF'S EXHIBIT NO. 6

PLAINTIFF'S EXHIBIT NO. 16

The house in question was located at the head and on the east side of Turtle Bay, a long, narrow, shallow inlet which at its mouth is about a mile in width, and opens into Tres Palacios Bay, a much larger body of water. In front of appellees' home, Turtle Bay is less than one-half mile wide, and normally the water is about one foot deep, and on the United States Department of Interior map in evidence as P.Ex. 24-25, is styled a bayou. The house was located about two miles west of the town of Palacios, the municipal airport and old Camp Hulen being in between, and about 2 miles inland and north of the house which was the subject of litigation in McDonald v. New York Central Mutual Fire Ins. Co., Tex.Sup.Ct., 380 S.W.2d 545. Much of the same evidence as was discussed in that opinion concerning the wind and water and wave action in the general area caused by the

hurricane September 9-11, 1961, was presented in the present case, including testimony of the witness Jensen. Without repeating the testimony, we refer to McDonald, supra, pages 546-547, for a clear description of the manner in which the elements of the hurricane reached the Palacios vicinity and of the weather phenonema present September 10 and 11, 1961, as shown by the testimony in the trial of this case.

Although many citizens of Palacios left before the eye of the hurricane passed through the area, some remained and rode out the storm. A number of these testified to the ferocity of the winds, variously estimated at from 125 to 175 miles per hour, and to the damage to buildings done by such winds as well as to the absence of water in Palacios and the land area surrounding prior to the change of the direction of the

wind from northeast to south and southwest about 4:30 to 5:00 p. m. September 11th. At least three witnesses testified to seeing tornadoes approaching the neighborhood of appellees' home Monday afternoon from the southwest and west. Witness Lowry testified that between 4:15 and 4:45 p.m. Monday, while in his car on Highway 35 less than half a mile from appellees' house, he saw two large tornadoes, mushrooms at the top, come inland from the west, their tails bouncing along the ground and whipping around, and watched while one hit and stripped out the Alcorn house (seen in appellees' exhibit 16, supra) less than a hundred yards from appellees' house, and also struck an outhouse on appellees' property. He also saw it strike and tear off parts of a corrugated iron hangar at the municipal airport. At this time, according to the witness, there was no water on the ground at appellees' place. Pieces of buildings were flying through the air, and caution caused him to leave to return to Palacios before damage was caused to the Christianson dwelling house. No one testified to seeing appellees' house thereafter. The evidence does establish that at some time during the hurricane, and after Lowry had left the scene, water did flood the area of appellees' property to the extent of six feet above the ground level. Whether appellees' house was still standing, or had been destroyed before such water arrived, became a fact issue under the direct and circumstantial evidence, and expert testimony.

Motion picture scenes taken in Palacios during the hurricane on Monday, as well as a large number of pictures of severe damage done to property well above the top water line, were in evidence, many of which tended to support appellees' theory of damage caused by winds rather than rising water or wave action. Each party relied strongly on expert testimony. Appellees produced Dr. Randolph Blumberg, an oceanographer and meteorologist, with a Ph.D. from Texas A & M in such studies, who was a consulting engineer primarily in oceanography and research engineering, and who qualified as an expert in the study of hurricanes and tornadoes and their effect on structures, and in determining the cause of damage to buildings. He testified at great length on hurricanes and tornadoes generally and Carla specifically. It was in testimony that the conditions at the site of appellees' dwelling were the same at the time of the trial as immediately following Carla, and that no material changes had been made. Dr. Blumberg, after making a detailed examination of such site, after studying all of the photographs in evidence, watching the motion pictures taken during the hurricane, considering the testimony of the wind and water actions, and the evidence of the appearance of tornadoes in the vicinity of appellees' property late Monday evening, and studying and interpreting a radar tracking film taken by the government weather bureau in Galveston during the occurrence of Carla shown at the trial superimposed over an official government tracking chart, and considering other matters in evidence, including destruction and damage to other nearby buildings, stated definitely his conclusion that the destruction of appellees' property was not due to wave or rising water, but that it was due to an explosion from within caused by the tremendous suction power of the terrific whirling winds of a tornado produced by the hurricane. According to his testimony, it was natural for tornadoes able to lift great weights and carry them long distances and able to totally destroy large buildings to be spawned by a hurricane, and in his opinion, such was the case with Hurricane Carla. Much other evidence, not necessary to mention in detail, was given by Dr. Blumberg concerning his study of and experience with hurricanes and tornadoes, and his ability to determine from the evidence before him the cause of damage.

Appellant placed two witnesses on the stand who qualified as experts in oceanography, meteorology, construction engineers, and in drawing conclusions of cause of damage to structures. These witnesses, on the basis of their review of all the infor-

mation available, expressed opinions contrary to those of Dr. Blumberg concerning the cause of damage to appellees' property, placing the responsibility on high water and wave action. The testimony of the experts, together with the factual and circumstantial evidence, raised issues of fact to be determined by the jury as to the cause of the destruction of appellees' property.

■ Appellant's Points Two, Seven and Eight state that the court erred in submitting Special Issue No. 2, for the reason that same was a comment on the weight of the evidence, and that there was no evidence and insufficient evidence to sustain an affirmative answer thereto, and that the jury's answer was against the greater weight and preponderance of the evidence. Points Nine and Ten make the same complaint, except as to comment on the weight of the evidence, to Issue No. 7. Issue No. Two with proper placement of the burden of proof on appellees inquired whether the dwelling house sustained damage or destruction as a direct result of tornado winds. Issue No. Seven asked whether the household goods, etc. within the building sustained loss and damage as a direct result of tornado winds. Both issues were answered in the affirmative. Appellant in his brief nowhere points out or indicates wherein issue No. Two was a comment on the weight of the evidence (Point Two), nor has it briefed this point by way of statement or otherwise. Hence, we consider such point as being waived. Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197; Weatherred v. Kiker, Tex. Civ.App., 357 S.W.2d 182, writ ref. n.r.e.

■ We have heretofore summarized much, but not all of the testimony, though all testimony has been considered in passing on appellant's points. Three witnesses testified to the presence of large tornadoes, the products of the hurricanes, in the area. One witness testified to watching a tornado tear through a house next door to appellees, and strike an outhouse of appellees. Many other facts as to damage to other buildings in the vicinity above the water line and of other

pertinent facts were placed in evidence, which formed part of the basis for Dr. Blumberg's expert opinions. Having thoroughly studied the rather lengthy statement of facts of 1201 pages, and the numerous exhibits, we hold that the jury's answers to Special Issues No. Two and No. Seven were supported by evidence, by sufficient evidence, and were not against the greater weight and preponderance of the evidence. Appellant's Points Nos. 2, 7, 8, 9, and 10 are overruled.

Appellant's 47th, 48th, 49th, 50th, 51st, 52nd, 53rd, and 54th points are directed at the jury's answers to Special Issues Nos. 13, 14, 15, and 16, claiming no evidence, insufficient evidence, and contrary to the greater weight and preponderance of the evidence. These are the only objections to these issues urged by appellant in this appeal, and he raised no objections to the wording of such issues. These special issues concern the exclusionary provisions of the policy as to hurricane damage plead by appellant, and while properly placing the burden of proof on appellee, call on the jury to find (13) whether any part of the damage to the dwelling was not directly caused by tidal wave, high water or overflow, whether driven by wind or not; (14) the same inquiry as to a combination of the winds of Hurricane Carla and tidal wave, etc.; (15) and (16) the same as (13) and (14) about damage to the household goods in the dwelling. The jury's answers were to the effect that no part of such damage was caused by tidal wave, high water, or overflow, whether caused by wind or not.

■ We have already summarized, to a limited extent, the testimony bearing on these issues. While the witness Jensen testified to high water and severe wave action late Monday afternoon in the immediate area where he spent the evening much nearer the mouth of Turtle Bay, where it adjoins the much larger Palacios Bay, he did not testify to what was happening at the head of Turtle Bay, or Bayou. The weight to be given his testimony was for the jury,

especially in view of the testimony of other witnesses who testified of no high wave action that far inland and in view of the circumstances appearing on the ground, and of the expert evidence of Dr. Blumberg. Such findings of the jury were based on evidence, on sufficient evidence, and were not against the greater weight and preponderance of the evidence, and these points of error are overruled.

Special Issues Nos. 9, 10, 11, and 12 concerned the exclusionary provision that insurer would not be liable for damage caused by rain, whether driven by wind or not, unless the wind shall first make openings in the walls or roof, and insurer shall then be liable only for loss to the interior of the building, or the insured property contained therein, caused immediately by rain entering the building through such openings. Appellant's points of error 11 to 32 inclusive allege error in the submission, and manner of submission of such issues.

■ We agree that there is nothing in the evidence to call for the submission of these issues. This was a case of total, complete destruction and loss of the dwelling house and its contents. Appellant does not claim on this appeal that any part of appellees' damage was caused by the "rain" exclusion. It does not appear that the judgment of the court is in any way dependent on the answers of the jury to Issues 9, 10, 11, or 12. There was no evidence that rain entering the building while it was still intact, or standing, caused any damage.

■ We hold that any error that may have been committed by the trial court in the submission of issues 9, 10, 11, and 12, becomes immaterial, and is not reversible error. Rule 434, Texas Rules of Civil Procedure; Anderson v. Clifton, Tex.Civ.App., 362 S.W.2d 957, writ ref. n.r.e.

Appellant's Points 1, 1-A, and 1-B, are to the effect that the court erred in submitting Special Issue No. 1 for the reason that same was a general charge, a comment on the weight of the evidence, and that such sub-mission changed, altered and varied the terms of a written contract. Points 3, 4, and 4-A make the same charge as to Special Issue No. 6.

As heretofore stated, Issue No. 1 asked the jury whether the dwelling was damaged and destroyed as a direct result of Hurricane Carla, and No. 6 asked the same with reference to the household goods and contents in the dwelling.

■ Neither of these issues inquired concerning a matter disputed in the evidence, since the record shows without controversy, and appellant states in its brief, that the hurricane did the damage and caused the destruction of appellees' property. The issues did not inquire whether the damage was caused by the *winds* of the hurricane; hence they were not ultimate issues, and were not properly submitted.

■ In view of the pleading by appellant of the exclusionary provisions of the policy, the burden was on appellee to prove by a preponderance of the evidence not only that his loss was directly caused by the hurricane, but that it was not caused by any of the excluded perils named in the policy, such as high water, wave action, flood, or the other perils not insured against; also, if caused by a combination of wind and any of such excluded perils, the percentage of loss caused by the excluded perils. McDonald v. New York Central Mutual Fire Ins. Co., Tex.Sup.Ct., 380 S.W.2d 545; Hardware Dealers Mutual Fire Insurance Co. v. Berglund, Tex.Sup.Ct., 393 S.W.2d 309; Paulson v. Fire Insurance Exchange, Tex. Sup.Ct., 393 S.W.2d 316. As stated by Justice Norvell in this last named case:

"In Hardware Mutual Dealers Insurance Company v. Berglund, * * * this day decided, we held that although it could be said that the hurricane caused the loss, yet, nevertheless the plaintiffs could not recover unless they were able to establish that the loss did not come within the exclusionary clause relating to 'tidal wave, high water, or

overflow, whether driven by wind or not.' "

■ While we agree that Special Issues No. 1 and No. 6 were improperly submitted to the jury, we find that subsequent jury findings to other issues, herein discussed, renders any error harmless in so far as the rendition of the judgment is concerned.

■ Appellant by its 5th and 6th points raised the question of no evidence, insufficient evidence, and against the greater weight and preponderance of the evidence, as to the jury's answer to Special Issue No. 4, which was that the actual cash value of the dwelling house immediately prior to Carla was $20,303.00. There was no point raised to the next finding, that the value after Carla was none, nor was any other error assigned as to issue 4. The house was built new in July, 1959, at a cost of $23,000. It was shown to have been in excellent condition immediately prior to Hurricane Carla. The original plans and specifications were introduced in evidence. Three experienced building contractors of the area familiar with construction costs in that area, testified that the reasonable cost of replacing the house in its condition prior to Carla, as per the original plans and specifications, would be from $19,860.00 to $20,665.63, providing use could be made of the concrete foundation remaining. These facts, while not the exclusive way to prove cash value, are admissible as proof of value. Crisp v. Security National Insurance Co., Tex.Sup.Ct., 369 S.W.2d 326. Though this case involves damage to personal property, it seems to confirm the principle that original cost and replacement costs are to be considered as evidence of cash value in an insurance case, in the following language:

"The courts have not abandoned the consideration of either market value or reproduction or replacement values in arriving at actual value to the insured, but evidence of those values may be used as a guide in making that determination rather than a shackle which compels strict adherence thereto. The trier of facts may consider original cost and cost of replacement, the opinions upon value given by qualified witnesses, the gainful uses to which the property has been put as well as any other facts reasonably tending to shed light upon the subject."

■ See, also, Millers Mutual Fire Ins. Co. of Texas v. Eggleston, Tex.Civ.App., 357 S.W.2d 766. The finding of the jury to the 4th special issue was supported by evidence, by sufficient evidence, and was not contrary to the greater weight and preponderance of the evidence. Points 5 and 6 are overruled.

Appellant's points 33–41 inclusive deal with the recovery by appellee of the sum of $1800.00 under the provisions of the policy concerning additional living expenses, as follows:

Coverage D: "If loss under Coverage A, B or C renders the described dwelling or appurtenant private structures untenantable, this Company agrees to pay the necessary and reasonable increase in expense in conducting the Insured's household (but not of any office) caused by such untenantability. * * * Loss under Coverage D shall be computed commencing with the date of loss and extending for, but not exceeding, the time required with due diligence and dispatch to repair or replace the property damaged or destroyed. * * *"

The jury found, in answer to special issues numbered as follows, that (12A) plaintiffs' dwelling house was rendered uninhabitable on about September 9 to 12, 1961, as a direct result of Hurricane Carla; (12B) it was rendered uninhabitable as a direct result of Tornadoes accompanying Hurricane Carla on or about September 9 to 12, 1961; (12C) the reasonable and necessary increase in expenses to plaintiffs in conducting their household within any reasonable time after Hurricane Carla was

$1800; (12D) plaintiff's dwelling house could have been completely restored with material of like kind and quality by the exercise of due diligence and dispatch in six months. Appellant's points are based on no evidence, insufficient evidence, and that the answers are against the greater weight and preponderance of the evidence, and additionally, as to issue 12C (point 39), that the issue was an attempt to and did vary, alter or change the terms of a written contract by adding language and conditions not found in such contract.

Both parties agree that this provision is comparatively new in insurance policies, and that they have found no Texas cases construing it, and no authorities are cited to us.

In the event the dwelling house was rendered untenantable as a result of an occurrence which would give rise to liability for the dwelling, appellant under Coverage D would be liable in an amount equal to the reasonable and necessary increase in expenses in conducting the insured's household caused by such untenantability *for the period commencing with the date of loss, and extending for, but not exceeding, time required with due diligence and dispatch to repair or replace the property damaged or destroyed.* This was not the period inquired about in Special Issue 12–C, which substitutes therefor the period "within any reasonable time after Hurricane Carla", thus leaving it to the jury to speculate on what would be a reasonable time, rather than limiting such period to the terms of the contract. It is true that in answer to Special Issue 12–D the jury found that six months would have been the time in which appellees' dwelling could have been completely restored with material of like kind and quality by the exercise of due diligence and dispatch. However, the jury's answer of $1,800.00 to 12–C is in no way made dependent on, or limited by, 12–D. Hence, Special Issue 12–C is subject to appellant's objection that it varied and altered the terms of the contract by adding language

and conditions not found anywhere in the contract, and appellants' 39th point is sustained.

Since there is no proper jury verdict authorizing the recovery of the sum of $1800.00 included in the judgment, the judgment must be reformed, and such sum of $1800.00 and interest be deducted therefrom.

Attached to the policy when it was purchased by appellees and delivered by appellant's agent were several endorsements, including one listed as HO-A1, and one listed as CDP-11. Appellant plead and sought to prove that endorsement HO-A1 was attached to the policy by mutual mistake of the parties, and was unauthorized by law, and that the language therein is void. The trial court, at the conclusion of the evidence, held against appellant, and ruled as a matter of law that HO-A1 and CDP-11 both formed valid parts of the contract. Appellant requested three special issues on this matter. Requested Issue No. E inquired whether the HO-A1 endorsement was attached to the policy as the result of a mutual mistake. No. F asked the jury to find whether another endorsement, HC-1, was delivered to plaintiffs to replace HO-A1. Requested Issue No. G dependent on an affirmative answer to the preceding issue, asked whether plaintiffs accepted HC-1 endorsement. The trial court refused to submit such issues in his charge. Points 44, 45, and 46 complain of error of the trial court in not submitting such issues.

Although the insurance agent who sold the policy testified that he made a mistake in including HO-A1 to the policy, there is no evidence that such mistake was a mutual mistake of the parties. There is no evidence that the premium charged did not include the protection afforded by HO-A1. Neither was there sufficient evidence that endorsement HC-1 was delivered to appellees to replace HO-A1 to require the submission of the other two issues requested.

However, in our opinion, this entire matter is immaterial to any issue on this appeal. It was under a provision of HO-A1 that the trial court submitted the issues on increased living expenses, Nos. 12A, 12B, 12C, and 12D. We have held that, for reasons heretofore stated, the trial court erred in permitting recovery in the judgment for such expenses and have deducted them from the amount of recovery. As to all other sums sued for, endorsement CDP-11, admittedly a part of the contract, provides coverage to the same extent against the perils of windstorm and hurricane.

Appellant says that the water exclusion provision is different in the two endorsements. In HO-A1, the exclusion provides that insurer would not be responsible for loss caused by "tidal wave, high water or overflow, whether driven by wind or not." In endorsement CDP-11, the policy says that it does not insure against loss by "surface waters, flood waters, waves, tide or tidal waves, high water, or overflow of streams or bodies of water, all whether driven by wind or not."

Appellant does not assign as error any objection to the form or substance of the court's issues Nos. 13, 14, 15, or 16, discussed above, being the issues on the water exclusionary provisions of the policy. His only assigned error as to such issues involves no evidence and insufficient evidence points. Neither does he raise or brief any point that the court refused any requested issue submitted by him concerning the excluded perils. Appellant has waived any objection to the wording of these issues.

We find no error in the trial court's ruling on the subject matter of these points of error Nos. 44, 45, and 46, which could have improperly affected the judgment rendered, and same are overruled. Rule 434, T.R.C.P.

Appellant's Point 55 states that the court erred in overruling and in not sustaining objections made to the experimental evidence made by appellees' witness (Dr. Blumberg) in superimposing radar film picures on a map, when the same was demonstrated not to be of sufficient accuracy.

Dr. Blumberg testified that he had been involved in radar tracking of storms and hurricanes since 1949, and qualified as an expert in interpreting and reading radar film. During his testimony, an official government tracking chart on Hurricane Carla, used by the Galveston Weather Bureau, was identified and introduced. The chart had each degree of latitude and longitude divided into ten concentric circles at intervals of 20 nautical miles, and gave the scale of the map. Also, a radar film strip showing pictures of a radar screen taken during Hurricane Carla at the Weather Bureau Office in Galveston, which tracked the route of the hurricane, was admitted in evidence. It was made clear that the grid circles and scale of the radar film were on the same 250 mile basis as the tracking chart.

Over appellant's objection that appellees were trying to make an experiment in the courtroom without creating the proper scientific standard, which would be highly prejudicial, Dr. Blumberg was permitted to set the chart up on a screen, and superimpose the radar tracking picture on the screen on top of the chart, and to track and interpret the film respecting the characteristics of the hurricane, and tornadoes breaking out of it.

From time to time during the experiment, certain inaccuracies would appear as the result of the projecting machine getting out of focus, or shifting or "jiggling" of the machine or the chart, and at such times appellant's counsel would object to such inaccuracies as showing distorted and erroneous pictures. The record shows that on such occasions, the witness was careful to explain any possible changes, deviations or shifting or comparison of ranges, and to adjust and correct it and explain same to the jury.

■ Experimental evidence, where material and relevant, is admissible in evidence when conducted by one shown to be qualified, and where there is a substantial similarity between conditions existing at the time of the occurrence which gives rise to litigation and those in existence at the time the experiment is conducted for demonstration purposes. When the dissimilarity between the occurrence, conditions, and the circumstances of the experiment is minor, or is made abundantly clear by explanation, its admissibility rests within the discretion of the trial court. Fort Worth & Denver Railway Co. v. Williams, Tex.Sup.Ct., 375 S.W.2d 279; Standard Motor Company v. Blood, Tex.Civ.App., 380 S.W.2d 651.

■ No reversible error was committed by the trial court in permitting the evidence complained of to go to the jury, and appellant's point 55 is overruled.

By its point No. 43, appellant alleges error in the definition of circumstantial evidence in the charge. In this respect the court instructed the jury as follows:

"By direct evidence is meant such evidence as you hear from the witness stand from witnesses who either saw, heard or experienced the conditions and facts they undertake to describe. By circumstantial evidence the court means all other type of conditions and evidence and facts admitted to your hearing from which may be inferred or deducted the existence of the fact involved in the questions submitted to you."

Appellants' particular objection to the last sentence above, appears to be that the jury were not instructed that the inference or deduction must be reasonable, and in this connection, appellant requested the court to substitute the following definition:

"You are instructed that any fact before you may be established by circumstantial evidence, direct evidence or both. A fact may be established by

direct evidence when proved by witnesses who saw the act done or heard the words spoken, or by documentary evidence. A fact may be established by circumstantial evidence when the fact is fairly and reasonably inferred from other facts proved in the case."

In Larson v. Ellison, 147 Tex. 465, 217 S.W.2d 420, the above definition suggested by appellant, with the exception that the verb "is" was used in each instance where "may be" is used above was given in the court's charge. Though the Supreme Court suggested that "may be established" was more appropriate than "is established", it held that the "looseness of the use of the verbs could not have mislead the jury." The court quoted with approval from Johnson v. Zurich General Accident & Liability Insurance Co., 146 Tex. 232, 205 S.W.2d 353, as follows:

"In practically all cases some of the evidence is circumstantial. Surely a jury understands that it is its function to make reasonable inferences from proven facts, and we are unwilling to sanction a rule based upon the hypothesis that it does not."

■ While we believe that the definition suggested by appellant is the more generally accepted one given by our trial courts, we do not find it to be exclusive, and as stated by the Supreme Court in Larson v. Ellison, supra:

"It is inconceivable that the giving of the questioned charge could in anywise have caused the rendition of an improper judgment. Nor is there anything in the record suggesting that Ellison was prevented by reason of this charge from fully presenting his case to the Court of Civil Appeals. We are unable to agree with the able arguments advanced by his counsel that his substantial rights have been injuriously affected."

Appellants' 43rd Point is overruled.

Point of Error No. 42, listed with the other points in the first part of Appellant's brief, is not thereafter mentioned or briefed. The point is waived. Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197; Weatherred v. Kiker, Tex.Civ.App., 357 S.W.2d 182, writ ref., n.r.e.

The policy sued on expressly insured against the perils of windstorm and hurricane. The evidence shows without dispute that appellees' loss and damage was caused by hurricane, and the jury found, on sufficient evidence, that the property sustained damage or destruction as a direct result of tornadic winds. However, the policy contained specific excluded perils which were not insured against, such as tidal wave, high water or overflow, all whether driven by wind or not; also for any loss caused by rain, with exceptions as stated heretofore in this opinion. There is no contention made, and no evidence, that the "rain exclusion" applied to the facts of the case. The jury found, on sufficient evidence, that no part of the damage or loss was caused by such other specifically named excluded perils. The findings of the jury of the amount of appellees' loss and damage were supported by the evidence. We have found no reversible error raised by appellant's points.

It is our holding that appellees have fulfilled the burden placed upon them by the terms of the policy, and have established appellant's liability for their proper damages. McDonald v. New York Central Mutual Fire Ins. Co., Tex.Sup.Ct., 380 S.W.2d 545; Hardware Dealers Mutual Fire Insurance Co. v. Berglund, Tex.Sup.Ct., 393 S.W.2d 309; Paulson v. Fire Insurance Exchange, Tex.Sup.Ct., 393 S.W.2d 316.

It appears that interest at the rate of six per cent (6%) per annum was allowed on the amount of appellees' loss from January 8, 1962, the sixtieth day after appellees filed their proof of loss with appellant, to March 18, 1964, the date of the judgment. Since we have eliminated the $1800.00 recovery for additional living expenses, the judgment of the trial court is reformed so that said sum of $1800.00, with interest at the rate of six per cent (6%) per annum from January 8, 1962, to March 18, 1964, be deducted therefrom, and as so reformed, judgment is affirmed.

Costs of appeal are assessed, eighty per cent (80%) against appellant, and twenty per cent (20%) against appellees.

## ON MOTION FOR REHEARING

We withdraw the statement made in our original Opinion that the witness Lowry testified that he watched while a tornado "also struck an outhouse on appellees' property." In lieu thereof, we quote from the testimony of Lowry, given in connection with his evidence of seeing two tornadoes move inland from the west, and of watching while one took the sides off the building at the airport, and damaged the Alcorn house, as follows:

"Q. Do you know the house west of Alcorn's?

A. I believe Mr. Christianson's.

Q. Was there any water around there?

A. No, sir.

Q. Was it beginning to peel?

A. No, sir.

Q. Was it beginning to break?

A. His pump house was beginning to break when I left."

On cross-examination:

"Q. All you saw, then, of the Christianson house of any damage was their pump house?

A. That was blowing apart when I was there.

Q. And then you left?

A. I left."

\*   \*   \*   \*   \*   \*

**66**

"Q. When you saw the funnels coming down, the only damage to the Christianson home was the pump house?

A. That is all I could see at the time."

In withdrawing from our opinion the specific statement mentioned above, we find no occasion to alter the views expressed by us. We have carefully considered all of the points set forth in appellant's motion for rehearing, and remain of the opinion that the judgment of the trial court should be reformed and affirmed. The said motion is overruled.