**INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**Daniel O. PITTSER and W. H. Pilcher, Appellees.**

**No. 7695.**

Court of Civil Appeals of Texas.

Texarkana.

Dec. 28, 1965.

Rehearing Denied Jan. 18, 1966.

John Smith, Roberts & Smith, Longview, for appellant.

Tom Steele, Linden, for appellees.

CHADICK, Chief Justice.

The plaintiffs, Daniel O. Pittser and W. H. Pilcher, sued the defendant, Insurance Company of North America for windstorm damage to a building insured by such company.

The building was located on the south side of state highway No. 49 near the

"Y" at the eastern edge of Hughes Springs, Cass County. Construction was that generally described as concrete block on concrete slab foundation, with a flat built-up felt and tar roof. Its dimensions were 50 feet width, 30 feet depth, front or north wall 18 feet high, the back (south) wall 16 feet. The roof projected out or overhung the front wall by about five feet, and the downward slope or fall was 16 to 24 inches front to back. The building had been vacant a few weeks on August 18, 1964, but in its 10 to 12 years prior existence it housed a drive-in malt stand, an automobile body repair shop, and a domino hall.

The evidence, in its aspect most favorable to the judgment shows that from midnight until around noontime on August 18, 1964, the weather in the general area of the building was "stormy", with rain and wind. A witness living within a one-half mile of the building characterized the early morning weather as "stormy", and said the wind began to "get up" as he left for work about seven o'clock in the morning. A carpenter testified the wind had such force as to close down roofing work on a structure approximately a mile distant from this building because it buffeted roofing material so much it could not be handled.

The agent who wrote the insurance policy lived approximately one mile from the building. He described the wind as "blowing excessively", that it was stormy over the general area and on inspection of the property the afternoon of August 18th he saw trees uprooted across the highway north of the building. He testified to having experience with windstorm damage and expressed the opinion that damage to the building was caused by windstorm.

One of the owners, plaintiff Pittser, testified that after receiving a communication, on August 17 or 18th he drove to Hughes Springs and arrived in the late afternoon, but before dark. About a mile east of the town, as he approached the building site, he noticed along the highway broken tree limbs, branches, and "just a conglomeration of debris and things like that—that they had considerable wind around there". In addition, he testified as follows:

"Q. State whether or not you noticed anything, say beginning three hundred (300) yards from your building until you got to your building?

A. As I make the curve going around there at the 'Y',

\* \* \* \* \* \*

Q. Yes.

A. \* \* \* along the north side of the road, there are a whole bunch of bricks and blocks and things like that, and on down in front of the place of business, it was a real wreck. The roof is caved in and these bricks fell down out in front of it, and directly across the road, there were some concrete blocks for one reason or another. How they got over there, I don't know, but they were there—limbs and things like that; little old trees around there were shook threadbare; across the field there were a couple of big old trees uprooted. I don't know how long they had been uprooted but probably sometime— I don't know, but I did notice one little tree or two or three— one had blown across that little fence there, in particular.

Q. Did you go out and examine that?

A. I walked out there and it looked like it had just been blown down.

Q. Did it have green leaves on it?

A. Yes. They were all around there like that.

Q. In what direction was the little tree blown down?

A. Toward the malt shop—toward the highway.

Q. Your building faces the north?

A. That's right.

Q. I take it the tree was blown to the south?

A. Yes.

Q. All right, sir, could you tell whether or not there was more debris and limbs and trash on the north as contrasted to the south side of the road?

A. Well, like I say these bricks and things were over there on the north side of the road and the malt shop is on the south side of the road. It seems like the malt shop was more or less a stop for a bunch of trash and debris that had blown up there.

Q. That leads to my next question. Did you observe any debris and trash in front of where your building used to be?

A. A whole lot.

Q. What kind of debris and trash was that?

A. Well, it was wood, lumber, paper and trash of all sorts.

Q. Did you notice any limbs of any kind?

A. Yes, little old trees around there that had been stripped down. It was that and leaves.

Q. Was that leaning up against your building?

A. Well, the building had fallen to the north. * * *

Q. All right.

A. * * * and the trash and everything naturally had blown out of the road over in front of it."

An architect who examined the building shortly after August 18 expressed the opinion that the damage to it was caused by the wind. On the basis of his study he concluded that a strong wind struck the north front of the building, was deflected upward catching the overhang, lifting the roof and unseating it. Such action, in his opinion, caused the walls to break and the roof to drop back in an unseated position forcing the north wall outward as the roof sank to the ground over a period of hours. It was shown by other evidence that the building was sound and in good repair two to six weeks before damage was noticed August 18th.

The reasonable inferences and deductions to be drawn from the facts and circumstances recorded constitutes evidence of probative force that unusually violent wind, having the aspect of a storm, swept through the locality of the building on August 18th. The appellant does not actually dispute this conclusion, its brief contains this statement:

"It is undisputed that Appellees' building collapsed, that the night before the collapse there was a wind blowing somewhere in the vicinity of the building and that if a windstorm caused the collapse of Appellees' building, Appellees are entitled to recover under the terms of their policy with Appellant. However, the missing link in the proof introduced by Appellees in the trial court was the causal connection between the wind and the subsequent collapse of Appellees' building."

█ The efficient or producing cause of windstorm damage may be proven by circumstantial evidence. See McDonald v. New York Central Mutual Fire Insurance Company (Tex.Sp.Ct. 1964) 380 S.W.2d

**904**

545; Hardware Dealers Mutual Insurance Company v. Berglund (Tex.Sp.Ct. 1965), 393 S.W.2d 309; Paulson v. Fire Insurance Exchange (Tex.Sp.Ct. 1965) 393 S.W.2d 316; Hartford Fire Insurance Company v. Christianson, 395 S.W.2d 53 (Tex.Civ. App. 1965, time limit for writ action unexpired). Given the facts that a sound building with a roof having a pitch that would shed ordinary rainfall was subjected to winds of sufficient force and violence to uproot trees, etc., and within a few hours thereafter the roof is found displaced and slowly sinking to the ground, forcing the building's front and side walls apart, together with an expert's opinion that wind probably caused the damage, is sufficient evidence to support the jury's conclusion that the windstorm was a producing cause of the damage to the building.

The record contains evidence that if given credence by the jury would have led to a different conclusion. This evidence is not of such great weight and character as to preponderate against the jury's finding, however. The insurance company's several points with respect to the absence, insufficiency, and great weight and preponderance of the evidence must be overruled.

■ The jury charge defined windstorm in this language:

"You are instructed that by the term 'WINDSTORM' as used in the preceding special issues, means something more than an ordinary gust of wind, no matter how prolonged, and though the whirling features which usually accompany tornadoes and cyclones need not be present, it must assume the aspect of a storm. You are further instructed that windstorms may be largely local, or they may cover a large area."

Objection was lodged to the last sentence of the definition. It is argued that the last sentence violates Rules 272 and 277, Vernon's Ann. Texas Rules, as a comment on the weight of the evidence and as an unnecessary and harmful explanatory instruction. The issues say that the definition is harmful because it "allows the jury to go far afield in speculating exactly what a windstorm is". The definition, except for the last sentence, was approved in Firemen's Insurance Company of Newark, N. J., v. Weatherman, 193 S.W.2d 247 (Tex.Civ.App. no writ). The opinion there says that it is a matter of "common knowledge that windstorms may be largely local, or cover a large area." Just how a matter of common knowledge would be harmful to the appellant is not developed by the brief. No harm is apparent as the matter is presented.

■ Counsel for the building owners propounded the following hypothetical question to the architect produced as a witness:

"Q. Also assume, if you will, please, that on the morning of August 18, 1964, that there was a severe thunder storm, windstorm, and there was also limbs and trees blown down in the immediate vicinity—assuming all those facts, do you have an opinion as to what caused this to collapse, Mr. Polkinghorn?"

The question assumes that proof has been made of a severe windstorm in the vicinity of the building. Objection was made that there was no evidence in the record of severe thunder storm or windstorm in the locality of the building. Reference is made to the evidence that has been set out. While a statement of the several facts leading to a conclusion that there was a windstorm at the time might have been preferable, yet the question as stated is not improper under this record. 2 Texas Law of Evidence (McCormick and Ray) Sec. 1403. This authority at page 240 says: "Counsel propounding the question is entitled to the witness's opinion upon any combination of facts inferable from the proof. He may, and usually does, assume facts in accordance with his theory

of the case. If the opponent desires to secure the expert's opinion upon a different set of facts, he may do so on cross-examination." Much the same question was asked and answered at another point without objection.

All of appellant's points of error have been carefully considered and the conclusion reached that reversible error is not shown. The judgment of the trial court will be affirmed.