**CUSTOM CONTROLS COMPANY,
Appellant,**

**v.**

**RANGER INSURANCE, et al., Appellees.**

**No. 01–82–0487–CV.**

Court of Appeals of Texas,
Houston.

Feb. 17, 1983.

Frank Caton, Houston, for appellant.

Tom Connally, Houston, for appellees.

Before EVANS, C.J., and COHEN and DOYLE, JJ.

## OPINION

DOYLE, Justice.

This is an appeal from a trial court's ruling granting the appellees' motion for summary judgment and denying the appellant's motion for summary judgment.

The parties filed stipulations of fact in the trial court and agreed that the sole issue for consideration was a determination of the valuation of loss under Clause 10 of their insurance policy. Both parties moved for summary judgment.

On November 20, 1976, the parties entered into an insurance contract whereby the appellees would insure the appellant's personal properties from November 20, 1976, to November 20, 1979. The appellant is in the business of contract manufacturing

of process control systems, principally in connection with the petrochemical business.

Custom Controls Company (Custom) received an amended purchase order from National Iranian Gas Company (National) for 12 wellhead control panels that were to be specifically designed for and constructed to meet the particular needs of National. The panels would not be readily marketable or saleable to anyone other than National. The contract between National and Custom required that all completed control panels be inspected and accepted by Davy Powergas (Powergas), an agent for National. Upon completion and inspection by Powergas, Custom had to crate the completed panels for export packaging and deliver them to the forwarding agent.

Custom began manufacturing the 12 wellhead control panels for National, had completed four through the shop checkout stage and had begun manufacturing the remaining eight panels by July 15. On July 16, Custom sustained a fire loss which destroyed the four completed panels and other property, but did not damage the eight panels that were in the process of completion.

Custom submitted a claim to Ranger which included a description of the panels, claiming the amount of the loss for the four panels to be $79,536.30. Custom also submitted a revised claim for loss of the panels to be $237,248 but Ranger included in its total payment only the $79,536.30 claim, the cost of re-manufacturing the panels.

Custom completed all 12 panels, which were inspected by a representative of National, who prepared a certificate indicating approval and acceptance of them.

In its first of two points of error, the appellant alleges that according to clause 10(f) of the insurance contract, the proper valuation for the destroyed wellhead control panels is the actual cash value of the panels in the marketplace at the time of their loss, not the cost of re-manufacturing the four destroyed panels.

The appellant argues that the provisions of clause 10(f), which deals with words of limitation in the insurance contract, are ambiguous and, therefore, this court should interpret the clause liberally in favor of the insured. *Ramsay v. Maryland General Insurance Company*, 533 S.W.2d 344 (Tex. 1976). Clause 10(f) states:

> (f) All other property—The *actual cash value* of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such *actual cash value with proper deduction for depreciation,* however caused, and shall in *no event exceed* what it *would then cost to repair or replace* the same with *material of like kind and* quality. (emphasis added)

The appellant contends that the contract contains no language that would limit recovery to its cost for re-manufacturing the control panels and that because the panels were destroyed, they could not be repaired. Therefore, the cost of replacing the panels with "material of like kind and quality" should be determined. The appellant cites two cases to support its position that the cost of replacement should be determined by the fair market value of the destroyed goods. However, those cases are distinguishable from the instant case. *Wright v. Gernandt*, 559 S.W.2d 864 (Tex.Civ.App.—Corpus Christi 1977, no writ), did not involve goods manufactured by the insured and did not construe a contract provision relating to value. In *City of Houston v. Church*, 554 S.W.2d 242 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.), the insured's warehouse was destroyed by flood and the proper damages of the destroyed chattel was the market value of the chattel. However, the chattel consisted of damaged cardboard cartons that were not manufactured by the insured but were stored in his warehouse.

The appellee contends that clause 10f is not ambiguous and that the contract provides that the insured is entitled to recover the actual cash value at the time of the loss but, its recovery cannot exceed the "cost to repair or replace the damaged property with material of like kind and quantity."

It contends that the "repair or replace" clause is a limitation to the insurer's liability, *Imperial Ins. Co. v. National Homes Acceptance Corp.*, 626 S.W.2d 327 (Tex.Civ. App.—Tyler 1981, no writ); that "cost to repair or replace with material of like kind and quality" is not ambiguous; and that it means one must restore the property to substantially its same condition as it was immediately prior to being damaged or destroyed. *Northwestern National Ins. Co. v. Cope*, 448 S.W.2d 717 (Tex.Civ.App.—Corpus Christi 1969, no writ). In *Imperial, supra,* a similar provision was in issue. It stated:

Liability hereunder shall *not exceed* the *actual cash* value of the property at the time of loss, ascertained with proper deduction for depreciation; *nor shall it exceed the amount it would cost to repair or replace the property* with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction . . .; nor shall it exceed the interest of the insured, or the specific amounts shown under "Amount of Insurance." (emphasis added)

The Court held that the clause was a limitation upon the insurer's liability and that courts allow recovery based upon the cost to repair or replace, rather than the common law measure of damages, which is the market value immediately before and immediately after the loss. *Id.* at 329, 330.

■ We conclude that clause 10f is not ambiguous and that the proper measure of damages according to it is the cost to the insured of re-manufacturing the 4 wellhead control panels rather than the fair market value of such panels. Appellant's first point of error is overruled.

In point of error two, the appellant contends that the trial court erred in its judgment because the wellhead control panels constituted "sold property" under clause 10(a) of the insurance contract. The appellant contends that all the provisions of the Uniform Commercial Code do not apply and that the court should examine the contract

in this case and conclude that the contract is ambiguous.

■ The first issue to be considered under this point of error is whether the provisions of the Uniform Commercial Code apply in the instant case. Tex.Bus. & Com. Code Ann. § 2.102 (Vernon 1968), hereafter cited as the Code, provides that Chapter 2 applies to transactions of goods. Section 2.105 defines "goods" as:

(a) "Goods" means *all things* (including specially manufactured goods) which are *movable* at the *time of identification to the contract for sale* other than the money in which the price is to be paid, investment securities (Chapter 8) and things in action . . . (emphasis added)

Section 2.501 provides that

. . . In the absence of explicit agreement identification occurs

(1)

(2) if the contract is for the sale of future goods other than those described in Subdivision (3), *when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers.* (emphasis added)

The control panels were "goods", were "identified" and "movable" as defined by the Code and therefore are covered by Chapter 2.

■ It must be determined whether there is a "sale" as provided by the Code. Section 2.106 states ". . . a sale consists of the passing of title from the seller to the buyer for a price . . ." Section 2.401(b) states:

*Unless otherwise explicitly* agreed *title passes* to the buyer at the *time and place* at which the *seller completes his performance* with reference to *physical delivery* of the goods. (emphasis added)

In the instant case, the parties had agreed that all the completed control panels would be inspected and accepted by Powergas, agent for National. Once the inspection had been completed, Custom had to crate the panels for export packaging and deliver them to the forwarding agent. The inspection, acceptance, crating, or delivery

had not occurred at the time of the fire. There were no other provisions for title to pass from the seller to the buyer. Therefore, according to §§ 2.106 and 2.401(b) of the Code, there was no sale. The appellee does point out that Texas case law defines a sale as "a transfer, for a consideration, of personal property by a passage of title thereto from the seller to the buyer." *First National Bank v. Joseph T. Ryerson & Son, Inc.,* 487 S.W.2d 377 (Tex.Civ.App.—Texarkana 1972, writ ref'd. n.r.e.)

The second issue is whether the contract is ambiguous and susceptible of more than one reasonable construction. Specifically, the appellant contends that paragraphs 5(c), 6(c), and 10(a) are in conflict.

Paragraph 5(c) states that this policy insures "personal property of others which is directly connected with assured's business while in the care, custody, or control of the assured, and for which the assured's responsible."

Paragraph 6(c) states that this policy does not insure "property sold on installment, conditional sale, trust agreement, or other deferred payment plan, after delivery to customers."

Clause 10 states:

(a) Sold Property—Net selling price of the Assured after all allowances and discounts.

(b) Property of Others—The amount for which the Assured is liable but in no event to exceed the actual cash value at time and place of loss. In addition this Company shall be liable for labor and materials extended to the time of loss.

(c) ...

(d) ...

(e) ...

(f) All other property—The actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then

cost to repair or replace the same with material of like kind and quality.

The appellant contends that adopting the provisions of the Code limits the coverage of clause 10(a) to property to which the plaintiff has passed title and possession but in which he retains a security interest.

The appellee advances the argument that paragraph 5(c) is included in the insurance contract to cover property belonging to others but which the insured uses in connection with his business. Examples are leased computers, photocopying equipment, tools or equipment.

The appellee further contends that paragraph 6(c) refers to property that has been sold by the insured, but the insured is willing to insure against loss while the property remains on the insured's property. Lastly, the appellant argues that paragraph 10(a) relating to sold property, affords the insured the right to recover the full sale price, which includes the cost of either purchasing or manufacturing the property, as well as all the overhead, commission, and other expenses incidental to the sale. We agree with this argument where there is a sale, but here there was no sale.

Additionally, the appellant contends that specially manufactured goods become "sold property" when the buyer can sue for specific performance and the seller is entitled to the price. However, a buyer may not sue for specific performance unless the seller fails to make delivery or repudiates the contract. §§ 2.711 and 2.717 of the Code. Further, a seller is not entitled to an action for the price until the buyer fails to pay the price as it becomes due. § 2.709(a). In the instant case, because the agreed conditions of manufacture, sale, and delivery had not occurred and the price was not due at the time of the fire, the buyer was not entitled to sue for the price, nor was the seller entitled to sue for specific performance. Therefore, these goods were not "sold". Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.