COMMONWEALTH LLOYD'S INSURANCE COMPANY, Appellant,

v.

Roy E. THOMAS, et al., Appellees.

No. 2–83–171–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 18, 1984.

Bankston & Lobingier, John R. Bankston and David B. Lobingier, Joe Shannon, Jr., Fort Worth, for appellant.

Steves & Leonard, Sterling Steves and Michael L. Sampson, Fort Worth, for appellees.

Before FENDER, C.J., and HUGHES and JORDAN, JJ.

## OPINION

JORDAN, Justice.

This suit on a fire insurance policy requires us to decide whether: (1) the law permits recovery of attorneys' fees; (2) if so, were they excessive; (3) the trial court erred in refusing a continuance; (4) there was any evidence or sufficient evidence to support the submission of additional living expenses incurred by the insureds and whether the trial court properly submitted that item under the terms of the policy; (5) considering the terms of the policy, submission of an issue as to replacement value instead of cash value of household items was proper; (6) admission of an in-court experiment was proper; (7) admission of personal opinion of good character reputation and of evidence as to good character and reputation generally was proper; (8) an instruction by the trial court sufficiently cured impeachment evidence of a single act of misconduct of a witness; (9) the submission of substantial compliance by the insureds with the Proof of Loss requirement of the policy was improper; and (10) prejudgment interest was correctly computed and properly awarded.

We affirm.

On February 2, 1981, the Thomases' home and contents were totally destroyed by fire. At time of loss they had a homeowners' broad form insurance policy with Commonwealth Lloyd's which provided coverage for the dwelling of $270,000.00, contents of the house of $162,000.00, and up to $54,000.00 for increased living expenses. The insurance company rejected the Thomases' claim for payment of the full amount of the policy. Suit was filed and the insurance company defended on grounds of arson and failure to substantially comply with the requirements of the policy. A jury trial of five weeks resulted in a jury verdict for the homeowners for: $270,-000.00 dwelling coverage, less $102,589.56 previously paid by appellant to the Thomases' mortgage company; $162,000.00 for loss of contents of the Thomas home; $27,-000.00 additional living expenses; $45,-441.46 prejudgment interest, plus $168,-582.50 attorneys' fees for the homeowners' attorneys. This appeal raises twenty-one points of error.

By its first two points of error appellant says there is no statutory authority for recovery by appellees of attorneys' fees.

Specifically, Commonwealth Lloyd's position is that under TEX.REV.CIV.STAT. ANN. art. 2226 [1] (Vernon Supp.1984), as amended, recovery of attorneys' fees in suits founded on oral or written contracts is authorized, but attorneys' fees are not recoverable against fire insurance companies because such companies are excluded from art. 2226 by virtue of their inclusion under TEX.INS.CODE ANN. art. 21.21, sec. 2 and art. 21.21–2, sec. 7 (Vernon 1981).

Some of the other statutes listed in art. 2226, condemning certain unfair or fraudulent practices of insurance companies, specifically authorize recovery of attorneys' fees in suits against insurance companies. The insurance company also insists that since TEX.REV.CIV.STAT.ANN. art. 2226 was amended in 1977 to include recovery of attorneys' fees on oral and written contracts and to add the exclusionary language noted above and emphasized in footnote 1, that appellate court opinions interpreting the exclusionary language of art. 2226 have reached contrary conclusions. Three 1979 cases, all suits on fire insurance policies, held attorneys' fees were not recoverable against fire insurance companies because of the exclusionary language. *See Standard Fire Ins. Co. v. Fraiman*, 588 S.W.2d 681 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ); *First Preferred Ins. Co. v. Bell*, 587 S.W.2d 798 (Tex.Civ.App.— Amarillo 1979, writ ref'd n.r.e.); *Allstate Ins. Co. v. Chance*, 582 S.W.2d 530 (Tex. Civ.App.—Beaumont), *rev'd on other grounds*, 590 S.W.2d 703 (Tex.1979).

Four later cases decided by courts of appeals, reached the opposite conclusion, holding that attorneys' fees were recoverable under art. 2226 in all suits on policies against insurance companies. *See Bellefonte Underwriters Ins. Co. v. Brown*, 663 S.W.2d 562 (Tex.App.—Houston [14th Dist.] 1983, writ pending); *Texas Farmers Ins. Co. v. Hernandez*, 649 S.W.2d 121 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.); *Aetna Fire Underwriters Ins. Co. v. Southwestern Engineering Co.*, 626 S.W.2d 99 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.); *Prudential Ins. Co. v. Burke*, 614 S.W.2d 847 (Tex.Civ.App.—Texarkana), *writ ref'd n.r.e. per curiam*, 621 S.W.2d 596 (Tex.1981). We note that although the most recent cases reached a result different than the 1979 cases, the Supreme Court in three of those cases refused error with the notation "no reversible error." We have decided to follow the reasoning and rationale of the four later cases and hold that appellees here are entitled to recover attorneys' fees.

█ Attorneys' fees are not recoverable in a suit on a contract absent some express provisions therefore or some statutory authorization thereof. *Knebel v. Capital National Bank*, 518 S.W.2d 795, 804 (Tex. 1974). Since there was no provision for attorneys' fees in the contract of insurance

---

1. Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts, or suits founded on oral or written contracts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees. The usual and customary fees in such cases shall be presumed to be reasonable, but such presumption may be rebutted by competent evidence. In a proceeding before the court, or in a jury case where the issue of amount of attorney's fees is submitted to the court for determination by agreement, the court may in its discretion take judicial knowledge of the usual and customary fees in such matters and of the contents of the case file without receiving further evidence. *The provisions hereof shall not apply to contracts of insurers issued by insurers subject to the provisions of the Unfair Claim Settlement Practices Act (Article 21.21–2, Insurance Code), nor shall it apply to contracts of any insurer subject* to the provisions of Article 3.62, Insurance Code, or to Chapter 387, Acts of the 55th Legislature, Regular Session, 1957, as amended (Article 3.62–1, Vernon's Texas Insurance Code), or *to Article 21.21, Insurance Code,* as amended, or to Chapter 9, Insurance Code, as amended, and` each such article or chapter shall be and remain in full force and effect. This Act shall be liberally construed to promote its underlying purposes. (Emphasis added.)

in this case, appellees rely on TEX.REV. CIV.STAT.ANN. art. 2226, as amended, for recovery of such fees.

Appellant argues that the attorneys' fees provisions of art. 2226 are not applicable to it because the latter provisions of that statute exempt insurance contracts that are subject to various provisions of the Insurance Code. The insurance company contends that because it is an insurance company, as defined by TEX.INS.CODE ANN. art. 21.21, sec. 2 (Vernon 1981) and a fire insurance company specifically exempt from the application of art. 2226 by TEX. REV.CIV.STAT.ANN. art. 21.21–2, sec. 7 (Vernon 1981) that recovery of attorneys' fees under art. 2226 is not authorized.

The same argument was rejected in *Prudential Ins. Co. v. Burke*, 614 S.W.2d at 850, and *Texas Farmers Ins. Co. v. Hernandez*, 649 S.W.2d at 123–24. In *Burke*, the Court of Appeals (Texarkana) pointed out that in excluding various insurance contracts from the statute *"the purpose of Article 2226 was to exclude only those claims against insurance companies where attorney's fees were already available by virtue of other specific statutes, as they are in those which Article 2226 specifically mentions."* (Emphasis ours.) *Burke*, 614 S.W.2d at 850. In refusing writ of error n.r.e., the Supreme Court wrote that the Court of Appeals correctly decided the case. *Burke*, 621 S.W.2d at 597. *Accord Bellefonte Underwriters Ins. Co. v. Brown*, 663 S.W.2d at 575; *Aetna Fire Underwriters Ins. Co. v. Southwestern Engineering Co.*, 626 S.W.2d at 102–03.

■ Under *Burke* and *Hernandez*, the result is that, as stated in *Hernandez*, attorneys' fees are recoverable in all suits on insurance contracts. If the suit is brought under one of the provisions of the Insurance Code mentioned in the latter part of art. 2226, the attorneys' fees section of that particular statute will allow recovery; otherwise, recovery is permitted under the earlier and general provisions of the statute. We hold that such a ruling is mandated by art. 2226.

The whole purpose of art. 2226 is to permit recovery of attorneys' fees in the circumstances described therein, and the statute is, by the express wording of the last sentence, to be liberally construed to promote its underlying purposes. The points of error are overruled.

By points of error three and four the insurance company complains that the award of attorneys' fees was excessive and the trial court erred in denying its motion for continuance on grounds of surprise based on an alleged late claim for attorneys' fees. These two points will be considered together.

■ Attorneys' fees, where recoverable by law, must be reasonable under the particular circumstances of the case and must bear some reasonable relationship to the amount in controversy. *Argonaut Ins. Co. v. ABC Steel Products*, 582 S.W.2d 883, 889 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.); *Union National Life Insurance Co. v. Reese*, 476 S.W.2d 928, 929 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.). Although the amount of attorneys' fees is a question of fact for the jury, the trial or appellate court has the duty to reduce the fee awarded if it is excessive. *Southland Life Ins. Co. v. Norton*, 5 S.W.2d 767, 769 (Tex.Comm'n App. 1928, holding approved); *Capitol Life Insurance Co. v. Rutherford*, 468 S.W.2d 535, 537 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ).

■ With regard to excessiveness, attorneys' fees are in the same category as general awards of damages. *Argonaut Ins. Co. v. ABC Steel Products*, 582 S.W.2d at 889. It is not necessary, before a remittitur may be ordered, to find that the jury was influenced by passion or prejudice or any other improper motive. *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835, 839–41 (1959). In deciding the question of excessiveness, the reviewing court is obligated to look at the entire record and to view the matter in the light of the testimony, the amount in controversy, the nature of the case, and the common knowledge

and experience of the court as lawyers and judges. *Southland Life Ins. Co. v. Norton,* 5 S.W.2d at 769; *Union National Life Insurance Co. v. Reese,* 476 S.W.2d at 930.

■ The amount sued for by appellees, and the amount in controversy, excluding attorneys' fees and pre-judgment interest, was $459,741.58, representing $270,000.00 for the dwelling, $162,000.00 for contents, and $27,741.58 additional living expenses. The insurance company, by some curious and rather novel reasoning, argues this was not actually the amount in controversy, and the amount was only $189,741.58, representing only a claim for loss of contents of $162,000.00 plus $27,741.58, for additional living expenses. Appellant arrives at this figure by asserting that: it had already paid $102,589.56 to appellee's mortgage company at time of trial and would have owed this amount regardless of whether the jury found arson as the cause of the fire or not, so this amount was not in controversy; since the company stipulated the dwelling loss as total, the amount recoverable under the policy was fixed at $270,000.00, so this amount was not in controversy; and, since the company had already advanced $10,000.00 to appellees on the contents' coverage, this amount was also not in controversy. Commonwealth Lloyd's, although it has been contesting this claim for more than three years now, says that if appellees prevailed upon the arson and proof of loss defenses, recovery of the $270,000.00 for the dwelling was automatic.

This is oversimplification of the matter and does not present a realistic approach to this hotly contested dispute which continued after the fire for two years before trial, which consumed five weeks. Appellees correctly point out the faulty reasoning and logic presented by appellant with respect to the amount in controversy. They argue that under a pre-trial "Status Quo Agreement" and order thereon by the trial court, the $102,589.56 was to be returned to appellant if it prevailed in its defense of the Thomases' claim, and that amount, therefore, was indeed in controversy. As to the amount of $270,000.00 for total loss of the dwelling, the Thomases also correctly argue if that amount was not in controversy, the insurance company would not have contested the claim on grounds of arson and would have paid it. They say this is what the whole controversy was about. As to the $10,000.00 on the contents loss, advanced to appellees by the insurance company, appellees point out, again correctly, that in its first amended counterclaim appellant prays for the return of the $10,000.00 plus interest.

We agree with the Thomases' position on the amount in controversy and hold that each of the above-specified amounts, under the terms of the policy and the facts in this case, were indeed in controversy and are at this writing. The amount in controversy was, as pled by appellees in their seventh amended original petition, $459,741.58, not, as appellant claims, $189,741.58.

The jury, in answer to the question of a reasonable attorneys' fee for appellees, found such sum to be $168,582.50. We agree that this is a large amount of attorneys' fees, and initially might seem excessive. However, our careful review of this extremely lengthy record dictates otherwise. The loss occurred in February of 1981, suit was filed in May of 1981, and trial, which lasted five full weeks, commenced on May 9, 1983. A total of 54 witnesses testified either in person or by deposition during the course of the trial. Appellant called at least eleven witnesses, including a chemist, an accountant, electrical experts, a fire investigator, the person who installed the burglar alarm system, six bankers by deposition, two attorneys, and different arson investigators. There were seventy-four (74) depositions taken, most of them by appellant.

One of appellant's own attorneys agreed, on cross-examination during trial, that this was a complicated case and one that "has required a greater degree of effort than most cases because of the complexities."

The record on appeal consists of nineteen (19) volumes of statement of facts, totalling 4008 pages, with two other volumes

containing 273 exhibits, all of which would indicate considerable complexity and a vast amount of time and effort on the part of all the attorneys involved in this case.

The insurance company also contends that most of appellees' attorneys time and legal effort was spent in preparation for their claim for tortious conduct of "bad faith" on the part of the insurance company which was added by an amended petition, but which claim was severed from the contract action on the policy by the trial court on April 28, 1983, just before trial.

Appellant's position is that once the tort claim for "bad faith" conduct on the part of the company was severed, the Thomases' attorneys transformed their "bad faith" claims into a claim of "waiver" and tried a large portion of the case on that theory. The record does not support this claim. Appellant had pled different acts of appellees as constituting a waiver in one form or another on the part of appellees and Issue No. 8 in the court's charge inquired if the Thomases waived the terms and conditions of the policy by doing or failing to do any one of eight different things. This issue was answered in appellees' favor, but the important point is that since waiver was raised by appellant, appellees could not ignore it. They had to defend the claim of waiver during trial, and of necessity, this defense did consume considerable attorney time and effort. There is nothing in the record to show attorney time spent on the "bad faith" claim which was severed from the contract action. Attorneys for appellees admit that most of their time and effort was consumed during the two weeks preceding trial and in the trial itself, but say that is not unusual. The facts are: the attorneys' time was spent in trying this long and complex case; the claim was strongly resisted; defenses were raised by the insurance company which had to be met and answered; and, appellee's attorneys introduced ample evidence of the time they necessarily spent in the preparation and trial of this case and the reasonableness of the fee they sought. Their proof showed a total of 1228.75 hours spent in preparation and trial, at an average hourly rate of $137.20, for a total fee of $168,582.50, which amount was actually billed to their client.

While, as we have indicated, the fee is large, we cannot say that under this lengthy record and the voluminous testimony and exhibits therein, the fee awarded by the jury was excessive. Point of error number three is overruled.

Commonwealth Lloyd's contends by its fourth point of error that the trial court erred in refusing its motion for continuance filed on the day of trial because the claim for attorneys' fees on the contract action was not asserted until April 27, 1983, twelve days before trial. The company argues that until that time the only claim for attorneys' fees was for the tortious "bad faith" claim against it, and it was not until after that phase of the suit was severed that the claim for attorneys' fees on the policy arose. This action, appellant says, came too late, was a surprise to appellant and put appellant in a position where it was unable to properly defend the huge claim for attorneys' fees.

Appellant excepted to the April 27, 1983 amendment by appellees which asserted the claim for attorneys' fees on the policy or contract action, but the exception was overruled by the trial court, as was appellant's motion for continuance on the ground of surprise and inadequate time to prepare.

The granting of a continuance is within the discretion of the trial court and its ruling thereon will not be disturbed on appeal unless an abuse of that discretion is clearly shown. *Hernandez v. Heldenfels,* 374 S.W.2d 196, 202 (Tex.1963); *Kieffer v. Miller,* 560 S.W.2d 431, 432 (Tex.Civ.App.— Beaumont 1977, writ ref'd n.r.e.). Although the claim for attorneys' fees based on contract was filed shortly before trial, the Thomases had pled for attorneys' fees as part of their damages in the assertion of the "bad faith" claim, and in fact appellant's attorneys had deposed at least one of appellees' attorneys prior to trial. Appellant also cross-examined both of appellees'

attorneys extensively during trial and had ample opportunity to present evidence of its own that the claimed attorneys' fee was excessive and exorbitant.

■ The experienced trial judge, faced with the motion for continuance on the day of trial, after several continuances had previously been granted one or both of the parties, felt that the insurance company was not surprised or harmed by the insertion of a claim for attorneys' fees on the contract action. This claim, though filed just twelve days before trial, was timely filed under TEX.R.CIV.P. 63 and the trial judge decided the case should be tried. We cannot say, given all the facts and law the trial judge had at the time in question, that there was any abuse of discretion in the overruling of the motion for continuance. Point of error four is overruled.

By points of error five through nine, Commonwealth Lloyd's complains of the alleged improper submission of Special Issue No. 8 in the court's charge, inquiring as to the amount of reasonable and necessary increase in the Thomases' living expenses after the fire, and that there was no evidence, or in the alternative, insufficient evidence to support the jury's answer of $27,000.00 to that issue. We consider first the question of whether Issue No. 8 was properly submitted.

By points of error seven through nine, appellant contends that the trial court failed to limit the jury's consideration of increased living expenses to the time Roy Thomas testified it would take to rebuild the house and that the issue as submitted varied or altered the terms of the insurance policy regarding payment of increased living expenses.

Special Issue No. 8 reads as follows:
SPECIAL ISSUE NO. 8

From a preponderance of the evidence what was the reasonable and necessary increase in the Thomases living expense in order for them as nearly as practical, to continue their normal standard of living from the time of the fire of February 2, 1981, until their home could have been rebuilt with the exercise of due diligence and dispatch under the circumstances which existed, but not beyond the time required for the Thomases to become settled in permanent quarters.

The insurance policy provided for an extension of coverage for increased or additional living expenses incurred by appellees after the fire but during the time it would take to rebuild using due diligence and dispatch. The exact language of the policy, under "Extensions of Coverage", is:

If loss resulting from any of the Perils Insured Against hereunder renders the insured property wholly or partially untenantable, the Company agrees to pay, not to exceed 20% of the Limit of Liability applicable to the described dwelling, as additional insurance:

(a) the necessary and reasonable increase in living expense to continue as nearly as practicable the normal standard of living of the Insured's household caused by such intenantability;

Loss hereunder shall be computed commencing with the date of loss and extend for (but not limited by the expiration of this policy) the time required, with the exercise of due diligence and dispatch, to repair or replace such damaged or destroyed property, but it shall not extend beyond the time required for the Insured's household to become settled in permanent quarters.

■ Basically, appellant's position is that Issue No. 8 failed to limit the jury's finding to increased living expenses allowed by the terms of the "Extensions of Coverage" provision of the policy. Because, appellant says, Roy Thomas testified on cross-examination that he could rebuild the house, using due diligence, in eight months from the date of the fire, the jury should have been limited to consideration of increased living expenses from February 2, 1981, the date of the fire, to October 2, 1981, which date was eight months after the fire. Since the jury was not so limited, appellant says the issue was improper. We disagree. Mr. Thomas' estimate of eight months was an approximation, and should

not, under the terms of this policy, bind him to rebuild in eight months from the date of the fire. Other factors and other evidence entered into the issue of whether due diligence and dispatch were used. The eight months' estimate was only part of the evidence which dealt with the question of whether the Thomases had exercised due diligence and dispatch in rebuilding their fire-destroyed home. The issue in question limited the matter of increased living expenses from the date of the fire "until their home could have been rebuilt with the exercise of due diligence and dispatch under the circumstances which existed, but not beyond the time required for the Thomases to become settled in permanent quarters." Except for the addition of the phrase "under the circumstances which existed," the issue tracked the increased living expense provisions of the policy and permitted the jury to consider all the evidence admitted on that subject. We do not see how the insurance company could have been harmed, or how, in fact, the issue could have been submitted more correctly. A limitation of recovery of living expenses, as appellant suggests, would have constituted a comment on the weight of the evidence and would have been improper.

■ The contention is also made that by adding the phrase "under the circumstances which existed," the trial court expanded the time period for computing the increased living expenses because this phrase permitted the jury to take into consideration the nonpayment of the policy proceeds or other impermissible circumstances which the jury believed justified the Thomases' delay in rebuilding their home. Again, we disagree. The addition of the disputed phrase, which, though not contained in the pertinent policy provisions, did nothing more than to properly allow the jury to consider all of the factors, under the evidence, which pertained to the question.

Appellant says this point is controlled by *Hartford Fire Insurance Co. v. Christianson*, 395 S.W.2d 53 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.), where it was held that, under an identical provision in a fire policy allowing recovery of additional living expenses, the addition of the words "within any reasonable time after Hurricane Carla" to the special issue on living expenses was improper because it did not limit the time for rebuilding to the terms of the policy. *Id.* at 62. The *Christianson* case is distinguishable from this one. The court in *Christianson* actually changed the time period for rebuilding designated by the policy. The issue in *Christianson*, in effect, wrote a new provision for the parties to the contract. Here, the additional phrase in no way changed or affected the terms of the policy with respect to the time for incurring increased living expenses. It merely permitted the jury to consider everything involved in the question of increased living expenses, including all elements which in this particular case constituted "the exercise of due diligence and dispatch." Points of error seven through nine are overruled.

The insurance company also attempts to persuade us, by points of error five and six, that there was no probative evidence, or in the alternative, insufficient evidence to support the jury's finding of the amount of increased living expenses.

■ A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; (4) the evidence establishes conclusively the opposite of a vital fact. *Royal Indemnity Co. v. Little Joe's Catfish Inn*, 636 S.W.2d 530, 531 (Tex.App.—San Antonio 1982, no writ); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

■ In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See*

*Stodghill v. Texas Employers Insurance Association,* 582 S.W.2d 102, 103 (Tex. 1979); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate,* 244 S.W.2d at 661–62.

■■■ Where the challenge to a jury finding is framed as an "insufficient evidence" point, we are to consider all the evidence in the case, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). If the court so determines, the finding should be set aside and a new trial ordered. *Id.*

■■■ In considering an "insufficient evidence" point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *Taylor v. Lewis,* 553 S.W.2d 153, 161 (Tex. Civ.App.—Amarillo 1977, writ ref'd n.r.e.). This court may not substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *Alford, Meroney & Co. v. Rowe,* 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.)

In deciding whether this unusually long record contains any evidence, or in the alternative, sufficient evidence to support the jury's answer of $27,000.00 to Issue No. 8, the provisions of the policy labelled "Extensions of Coverage", quoted above, must be emphasized and borne in mind. Under these provisions the Thomases were entitled to be reimbursed for all *"necessary and reasonable increase in living expense to continue as nearly as practicable the normal standard of living of the Insured's household caused by such untenantability."* (Emphasis added.) This

amount was to be computed commencing with the date of the loss (February 2, 1981) and to extend for the time required, with the exercise of due diligence and dispatch, to repair or replace such damaged or destroyed property, not to extend beyond the time required for the insured to become settled in permanent quarters.

The questions of "no evidence" and "insufficient evidence" raised in points of error five and six will be treated together. There were three main categories of increased living expenses incurred by the Thomases following the fire: (a) laundry; (b) housing or rental expenses; and, (c) food. Mrs. Margie Thomas testified in great detail about these increased costs, and that she and her husband had spent considerably more than the $27,000.00 found by the jury as increased living expenses. She then testified that for just part of the time between the date of the fire, February 2, 1981, and time of trial, May 9, 1983, they had spent $21,189.30 on housing or rental expenses for various places of abode, $918.78 for cleaning, and $4,237.90 for food. She also testified that the food bill for $4,237.90 was just about half of what they actually spent, but since they had eaten at restaurants most of the time, she had reduced the total expenditure for food by one-half. These figures were supported by actual receipts for most, if not all, of those items of expense, and were introduced into evidence during the trial as plaintiffs' exhibits nos. 21 and 21a. Mrs. Thomas specifically testified that the items in plaintiffs' exhibit no. 21 did represent increased living expenses.

The main thrust of the insurance company's argument that there is no evidence, or insufficient evidence, to support the jury's finding of increased living expenses, is that there was no evidence as to expenses incurred by the Thomases before the fire, so that there was no evidence whatever of what the "increased living expenses" were after the fire.

■■■ The contention is that before the Thomases were entitled to a submission of

an issue on increased living expenses, it was incumbent on them to show by probative evidence the amount for food, housing, rent or other living expenses spent before the fire. Appellant would have the insureds here itemize or detail the cost of food incurred by them before the fire, for example, to show the jury that the expense for food after the fire was actually increased or was larger than the amount for food spent before February 2, 1981, the date of the fire. The insurance company says that because this wasn't done, there was no evidence, or there was insufficient evidence, to support the submission of this question to the jury or to support the jury's answer to that question. We disagree with this position, holding that all that was required of the Thomases was that they show by a preponderance of the evidence the amount of necessary and reasonable increase in living expenses after the fire to permit them to continue as nearly as practicable the normal standard of living they had had before the fire. It was then up to the jury to determine what amount of expenses incurred was reasonable and necessary and to determine whether or not the Thomases had met the proof required by the insurance policy.

■■■ We deem it unnecessary to recite in detail the testimony on these various items of increased living expenses in this voluminous record, but will refer to some of the testimony which we think amply and sufficiently supports the jury's answer to Special Issue No. 8. According to Mrs. Thomas, she and her husband were engaged, either separately or together, in the real estate business, the home construction business, and the ranching and dairy farm business. She testified that their net worth before the fire was approximately $1,500,000.00, and that for the three or four years before the fire they had built and sold seventeen to twenty-five houses each year. She further testified that the house which burned was also built by the Thomas Construction Company, was a ranch style house of approximately 5,000 square feet of living area, worth approximately $375,000.00, and would have had a rental value of $3,750.00 to $4,000.00 per month. This testimony was adduced to show the jury their financial status and their standard of living before the fire in order to prove that the itemized items of increased living expenses were necessary and reasonable and in conformance with that standard. It is undisputed that the Thomases' standard of living was high, as were their living expenses before the fire.

The home at 1605 Hargrove Lane and all of its furnishings and contents were completely destroyed by the fire on February 2, 1981, leaving the Thomases with no home and no furniture. Appellant attacks each item of increased living expense offered by the Thomases, but particularly attacks the payment of $3,000.00 per month for a stay of two months at a hotel in Fort Worth. Appellant further attacks the payment for six months of $2,000.00 per month interest on the mortgage on a home built by the Thomases for resale and in which they lived for six months. These items of expense may seem high and unreasonable to some, and perhaps would be for the average homeowner who was dispossessed of home and furnishings. However, in this particular case, under the evidence in this record, only a small part of which we have referred to, those items were not unreasonably high. It is noted that according to Mrs. Thomas, she advised the insurance company that she and her husband were living in the hotel at a cost of $3,000.00 per month and no objection was made to their residing in the hotel.

All of the testimony on increased living expenses was admitted for consideration by the jury, which was entitled to weigh all of the evidence on this subject, and to judge and evaluate the credibility of the witness, Mrs. Thomas, as well as others who testified. We point out that Mrs. Thomas was on the witness stand for several days, and she was cross-examined by appellant's counsel at length. This examination took two hundred seventy-five (275) pages in the statement of facts.

Having read and carefully reviewed all of the testimony on the issue of the increased living expenses to which the Thomases were entitled under the terms of their insurance policy, we simply cannot say there is no evidence, or that the evidence is too weak or insufficient to support the jury's answer to the inquiry in Special Issue No. 8 as to increased living expenses. To the contrary, we hold there was ample and sufficient evidence to require the submission of Issue No. 8 to the jury and to support its finding thereon. Points of error five and six are overruled.

Points of error ten through fourteen all relate to the alleged improper submission of Special Issue No. 7 inquiring of the pecuniary loss or damage caused to appellees' household furniture, wearing apparel and personal property by the fire of February 2, 1981. Although there are five points raised with respect to this issue, they all complain of the instruction given in connection with Special Issue No. 7 and the failure of the court to submit an issue requested by appellant inquiring as to the actual cash value of the household goods at appellees' house at the time of the fire.

The court submitted the following special issue and instruction:

SPECIAL ISSUE NO. 7:

From a preponderance of the evidence what pecuniary loss or damage, if any, do you find was caused to the household furniture, wearing apparel and personal property of the Thomases by reason of the fire of February 2, 1981.

In answering this question you are instructed that in determining such pecuniary loss or damage you will consider the actual cash value of the cost of replacement of such articles immediately before the fire on February 2, 1981. You will not consider any depreciation in the cash value of any such articles and you will not consider any fanciful or sentimental considerations.

Some three months before the fire, the Thomases increased their household contents coverage and a rider designated "REPLACEMENT COST ENDORSEMENT COVERAGE B—UNSCHEDULED PERSONAL PROPERTY", and containing the following language, was attached to the policy:

In consideration of an included additional premium it is agreed the policy is amended as follows:

I. With respect only to Section I—Coverage B—Unscheduled Personal Property, the second sentence of the first paragraph of Section I—Property Section is amended as follows:

Unless otherwise provided, this insurance shall apply only at the premises of the dwelling described on Page 1, and liability of the Company shall not exceed: the specified Limits of Liability; nor, the replacement cost at the time of loss; nor, the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss; nor, for more than 400% of the actual cash value at time of loss; nor, shall it exceed the interest of the Insured.

The unscheduled personal property for the Thomases was insured for the amount of $162,000.00 which the jury found was the amount of loss of personal property. Commonwealth Lloyd's argues that under the quoted wording of Section I of the endorsement, limiting its liability as therein stated, it was obligated for only the lesser of the amounts mentioned in Section I, and that the instruction given by the court in Issue No. 7 varied the terms of the endorsement. The company says the instruction to consider the actual cash value of the cost of replacement is a blending of two types of insurance coverage resulting in a non-existent standard. Appellees' brief on these points of error does not answer appellant's contention with respect to the alleged erroneous submission of Special Issue No. 7 and is of little, if any, help to the court.

Appellant's contention in this regard is that since, under a portion of the language of Section I of the endorsement it could not be liable for more than 400% of the actual cash value of the household goods at time

of loss, it was necessary for it to obtain a finding as to the actual cash value of the household goods at time of loss. Thus, the company urges, it was error for the trial court to refuse its requested issue asking the jury to find the actual cash value of the household goods on February 2, 1981. With this requested special issue, appellant also submitted a requested definition of actual cash value which would have instructed the jury that the term meant the "sum of money, if any, which would be paid by a willing buyer, under no obligation to buy, to a willing seller, under no obligation to sell."

The insurance company submits no authorities for the proposition that it is obligated only for the lesser amounts mentioned in Section I of the endorsement. It does cite and quote from an Indiana Supreme Court case, *Travelers Indemnity Co. v. Armstrong,* 442 N.E.2d 349 (Ind. 1982), wherein the court, in a case involving repairs to or replacement of a building, discussed the difference between an actual cash value policy and a replacement cost coverage policy, in this language:

> The actual cash value policy is a pure indemnity contract. Its purpose is to make the insured whole but never to benefit him because a fire occurred. *Appleman on Insurance 2d* sec. 3823 at pp. 218–219; (Citation omitted). Replacement cost coverage, on the other hand, reimburses the insured for the full cost of repairs, *if he repairs or rebuilds the building,* even if that results in putting the insured in a better position than he was before the loss. *Id.* at 352.

While the *Armstrong* case is not binding on this court, its language with respect to a replacement cost coverage, when compared with the endorsement involved in this case, is persuasive. We hold the endorsement here, which was added to the Thomases' policy for an increased premium, and which is styled "REPLACEMENT COST ENDORSEMENT COVERAGE B—UNSCHEDULED PERSONAL PROPERTY", entitled them to the cost of replacing their household goods, furniture,

and personal property lost in the fire of February 2, 1981.

Nothing in the subject endorsement indicates in any way that the insurance company is liable only for the lesser of the amounts stated in Section I, as appellant argues. Of the five limitations on liability for loss of unscheduled personal property, two of them refer to replacement costs. If, as appellant insists, its liability is limited to 400% of the actual costs of the household goods at the time of loss, the endorsement could and should have stated that. It has long been the established law in this state that language in an insurance contract, prepared by the insurer, will be strictly construed against the insurer. *Blaylock v. American Guarantee Bank Liability Insurance Co.,* 632 S.W.2d 719, 721 (Tex. 1982); *Ramsay v. Maryland American General Insurance Co.,* 533 S.W.2d 344, 349 (Tex.1976); *Republic National Life Insurance Co. v. Spillars,* 368 S.W.2d 92, 94 (Tex.1963).

Although neither of the parties to this appeal cited any authorities that dealt directly with these points of error, we have found several cases which support our holding that the wording of Issue No. 7 was proper. In *Imperial Ins. Co. v. Nat'l Homes Acceptance Corp.,* 626 S.W.2d 327 (Tex.App.—Tyler 1981, writ ref'd n.r.e.), appellant had issued a Texas Standard Fire Insurance Policy on a residence to which appellee had acquired title. The house was partially destroyed by fire and appellant denied liability under its policy on several grounds. The policy contained a provision strikingly similar to the one regarding loss of unscheduled personal property in the policy involved in this case. That provision read in part:

> Subject to Article 6.13 of Texas Insurance Code—1951, liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the

loss, without allowance for any increased cost of repair or reconstruction ...; nor shall it exceed the interest of the insured, or the specific amounts shown under "Amount of Insurance." *Id.* at 329.

The court in *Imperial* said that this provision *is a limitation upon the insurer's liability, not a substantive measure of damages.* (Emphasis added.) *Id. See also Manhattan Fire & Marine Insurance Co. v. Melton,* 329 S.W.2d 338, 341 (Tex. Civ.App.—Texarkana 1959, writ ref'd n.r. e.); Annot., 61 A.L.R.2d 711, 714 (1958).

In *Manhattan,* the court based its result upon the facts that the parties apparently construed the appropriate measure of damages as the cost to repair or replace and neither party pled nor proved an alternative value as a measure of damages or as a limitation on the insurers' liability.

In other cases where the policy contains the provision quoted from the *Imperial* case, the courts have allowed recovery based upon the cost to repair or replace. *Commercial Insurance Co. of Newark, N.J. v. Colvert,* 425 S.W.2d 34, 35 (Tex.Civ. App.—Fort Worth 1968, no writ); *Farmers Mutual Protective Ass'n of Texas v. Cmerek,* 404 S.W.2d 599, 600 (Tex.Civ.App.— Austin 1966, no writ); *Lerman v. Implement Dealers Mutual Insurance Co.,* 382 S.W.2d 285, 288 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.); *Gulf Insurance Co. v. Carroll,* 330 S.W.2d 227, 233 (Tex.Civ. App.—Waco 1959, no writ).

In *Custom Controls Co. v. Ranger Insurance Co.,* 652 S.W.2d 449 (Tex.App.— Houston [1st Dist.] 1983, no writ), involving a fire insurance policy and loss of four wellhead control panels, the policy provided with respect to loss of such property:

(f) All other property—The *actual cash value* of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such *actual cash value with proper deduction for depreciation,* however caused, and shall in *no event exceed* what it *would then cost to repair or replace* the same with *material of like kind and* quality. (Emphasis added.)

*Id.* at 451.

The court in *Custom Controls* relied on *Imperial Ins. Co. v. Nat'l Homes Acceptance Corp.,* 626 S.W.2d 327, and held that the above-quoted provision meant that the proper measure of damages is the cost to the insured of remanufacturing the four wellhead control panels rather than the fair market value of such panels. *See also,* to the same general effect as *Imperial Ins. Co.,* 626 S.W.2d at 330, and *Custom Controls Co.,* 652 S.W.2d at 452. *Crisp v. Security National Insurance Co.,* 369 S.W.2d 326 (Tex.1963), where the Supreme Court said:

The quoted clause constitutes only a *limitation on the amount of recovery.* It provides that the *recovery shall not exceed the actual cash value of the property less depreciation nor exceed the cost of repair or replacement.* It does not establish a contractual measure of damages to which the insured must be relegated. (Emphasis added.) Id. at 328.

Points of error ten through fourteen are overruled.

By point of error fifteen Commonwealth Lloyd's complains of the admission into evidence during trial of an in-court experiment designed to demonstrate that burning beams in the bathroom of the Thomases' house would have emitted a large amount of black soot and smoke.

The insurance company's main defense of this action on the fire insurance policy was arson and in this respect it offered considerable testimony to show that there was a heavy amount of black smoke seen by witnesses during the fire. The theory was that diesel fuel was used in igniting and expanding the fire. In support of this theory appellant offered proof of heavy soot deposits on the rock wall of the tub in the master bathroom and a laboratory analysis which was shown contained a hydrocarbon identified as diesel fuel with little heat stress. Appellant's position was that the burning of the diesel fuel produced the soot which was deposited on the surface of the sunken tub wall.

Appellees' rebuttal theory was that the soot deposit on the sunken tub wall came from burning decorative styrofoam beams on the ceiling of the bathroom. Over objection, an expert witness for appellees, in the courtroom, burned a small portion of a styrofoam beam identical to the ones in the Thomases' bathroom at the time of the fire. The object of the experiment was to demonstrate that the burning of even a small portion of this styrofoam would produce considerable black soot and black smoke. Appellant objected to this in-court experiment on the grounds that there was no showing that the circumstances of the in-court burning of a portion of the beam was substantially similar to those existing on February 2, 1981, and no showing of the chemical composition of the beam used, as well as other grounds.

The trial judge has considerable discretion in admitting or refusing evidence of this type. *Pittman v. Baladez*, 158 Tex. 372, 312 S.W.2d 210 (1958); *General Motors Corp. v. Simmons*, 545 S.W.2d 502 (Tex.Civ.App.—Houston [1st Dist.] 1976), *rev'd on other grounds*, 558 S.W.2d 855 (Tex.1977); *see also Hartford Fire Insurance Co.*, 395 S.W.2d at 64.

Under this record there was ample proof of sufficient similarity between the in-court experiment and the conditions existing at the time of the fire, and the experienced trial court did not abuse its discretion in admitting the burning of a portion of the styrofoam beam as an in-court experiment. Any minor differences in the conditions were for the jury to weigh and resolve.

Moreover, even if admission of the experiment was erroneous, we hold that under all the voluminous evidence on the question of the cause of the fire, this experiment evidence was not calculated to, nor in all probability did it, cause the rendition of an improper verdict judgment. TEX.R.CIV.P. 434. There is no showing whatever that this experiment improperly influenced or persuaded the jury in finding that arson was not the cause of the fire. There was no direct evidence that the Thomases burned their own home, and there was ample and sufficient circumstantial evidence to support the contrary conclusion. Any error in the admission of the in-court experiment was harmless. Point of error fifteen is overruled.

Appellant in its sixteenth point of error complains that the trial court erred in allowing, over objection, the introduction of personal opinion testimony as to appellees' honesty and integrity. It maintains such testimony must be restricted to general reputation evidence.

Generally, supporting evidence of a party's good character in a civil case is inadmissible. *Reliance Insurance Co. v. Smith*, 44 S.W.2d 446, 447 (Tex.Civ.App.—Texarkana 1931), *aff'd*, 66 S.W.2d 675 (Tex. Comm'n App.1933, judgment approved). Testimony of a party's good character for truth or honesty should be admitted, however, where the character of a party is directly at issue, where a witness has been impeached, or where a party either in his pleadings or evidence charges his adversary with a crime of moral turpitude. *Grant v. Pendley*, 39 S.W.2d 596, 599 (Tex. Comm'n App.1931, holding approved). Evidence of a party's reputation for honesty and fair-dealing is thus admissible when a party is charged with fraud or a crime involving moral turpitude. *Brannon v. Gartman*, 288 S.W. 817, 822 (Tex.Comm'n App.1926, holding approved); *Hunt v. Garrett*, 275 S.W. 96, 106 (Tex.Civ.App.—Fort Worth 1925), *rev'd on other grounds*, 283 S.W. 489 (Tex.Comm'n App.1926, judgment approved).

The insurance company's defense of this action on its fire policy was arson. This defense actually accused appellees of the crimes of arson and of fraud. This accusation put appellees' character at issue, and supporting evidence of appellees' good character was admissible.

Evidence of good character must be confined to proof of a party's reputation in the community. *Tarwater v. Donley County State Bank*, 277 S.W. 176, 178–79

(Tex.Civ.App.—Amarillo 1925, no writ). A witness' personal opinion of a party's character is inadmissible. *Sherrill v. Phillips,* 405 S.W.2d 627, 633 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.); *Negociacion Agricola y Ganadera de San Enrique v. Love,* 220 S.W. 224, 230 (Tex.Civ.App.—Amarillo 1920, no writ).

A witness, Dr. Millsap, a minister, was expressly asked for his "opinion" of Roy Thomas's character for honesty and integrity. Under the rules of evidence then in effect, Millsap's testimony was inadmissible as the record clearly reflects it was based only on personal knowledge. Moreover, the minister's opinion of Thomas's reputation was based primarily on his longstanding acquaintanceship with Thomas's parents.

Any error, however, in the admission of this testimony was harmless. After reviewing this entire record, we cannot say that this erroneous personal opinion of Roy Thomas's reputation had any solid effect on the jury finding that arson was not the cause of the February 2, 1981 fire. There is an abundance of evidence to support the jury's finding on this question. There is, as we have previously pointed out, no direct evidence at all that Thomas or any member of his family had anything to do with the fire that destroyed his home.

We hold, therefore, that under TEX.R. CIV.P. 434 the error complained of did not amount to such a denial of appellant's rights as was reasonably calculated to cause the rendition of an improper judgment. Point of error sixteen is overruled.

In point of error seventeen, appellant contends that the trial court erred in allowing appellees to introduce evidence of appellee's general character because such evidence if admitted must concern a specific character trait. In the testimony complained of, appellees asked Tommie Owen, a bank president, whether appellees' reputation in the community was good or bad. The question was too general. Properly framed, the question should have inquired about a particular character trait germane

to the lawsuit. *Brannon v. Gartman,* 288 S.W. at 822; 2 R. Ray, Texas Law of Evidence Civil and Criminal sec. 1495, at 184 (Texas Practice 3d ed. 1980). The erroneous admission of evidence as to appellees' general good character, however, does not require reversal as no prejudice was shown. *Dennis v. Hulse,* 362 S.W.2d 308, 310 (Tex.1962); *Wells Fargo & Co. v. Benjamin,* 165 S.W. 120, 126 (Tex.Civ.App.—Texarkana 1914), *aff'd,* 107 Tex. 331, 179 S.W. 513 (1915). Further, a review of the record as a whole discloses any error was harmless. *See National Surety Corp. v. Rushing,* 628 S.W.2d 90, 93 (Tex.App.—Beaumont 1981, no writ). Point of error seventeen is overruled.

The insurance company next attacks, in point of error eighteen, the refusal of the trial court to declare a mistrial. Duane Selman, called as an expert witness on arson by the Thomases, acknowledged that he at one time had, as a student in an arson investigation course he taught, Britt McManus, another arson investigator who had previously testified in appellant's behalf. In response to a question as to whether he had any problems with McManus as a student, Selman testified that McManus had once given him "a hot check." Appellant's counsel objected to the answer, the objection was sustained and the jury was twice instructed not to consider the question or the answer for any purpose. Appellant's motion for mistrial was denied. This answer was obviously improper as an attempt to impeach another witness' testimony by a single act of misconduct. *Christie v. Brewer,* 374 S.W.2d 908, 914 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.e.); 1 R. Ray, Texas Law of Evidence Civil and Criminal sec. 655, at 581 (Texas Practice 3d ed. 1980).

The insurance company contends that the improper attempt to impeach its arson witness could not be cured by the court's admittedly prompt instruction to disregard. We cannot agree. The trial judge instructed the jury to disregard the answer as soon as the improper answer was given and before the request for in-

struction was made. The instruction was repeated after the request was made. The improper impeachment testimony was not so harmful or prejudicial that it could not be cured by a proper and timely instruction. Point of error eighteen is overruled.

By points of error nineteen and twenty, the insurance company asserts error in the submission of Special Issue No. 6 inquiring if the Thomases had substantially complied with the policy requirement for the filing of a Proof of Loss. The trial court asked the question of the jury, then gave this instruction:

You are instructed that the term substantial compliance means that the Thomases have filed with the insurance company a sworn Proof of Loss in substantially the form required by the express terms of the policy.

Appellant insists that this instruction constituted a comment on the weight of the evidence and amounted to an instruction to the jury to answer the issue affirmatively.

We do not find that this was a prohibitive comment under TEX.R.CIV.P. 277, which provides in part that the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence where it is properly a part of an explanatory instruction or definition. If it was a comment on the evidence at all, it was an incidental one, and it did not, as appellant claims, tell the jury to answer the issue favorably to appellees. The purpose of the instruction or definition was to aid the jury in answering the issue, which is permissible under Rule 277. The fact that the submitted definition of "substantial compliance" used the term "substantially" is not fatal per se.

Even should we hold that this instruction was a comment on the weight of the evidence, we cannot say that it was calculated to cause the jury to return an improper or unfair verdict. Appellant, in its short treatment of these points of error, does not point to any evidence in the record which indicates any failure on the part of appellees to file a proper Proof of Loss.

We find there was evidence both ways on this subject, and the jury, after weighing that evidence, found that appellees had complied with the requirement. The instruction, submitted to assist the jury, did not improperly harm or injure appellant.

The insurance company requested a definition of "substantial compliance," which, under the evidence and the policy requirement, was incorrect and would have been erroneous. Points of error nineteen and twenty are overruled.

Appellant in its twenty-first point of error claims the trial court was in error as to the date from which prejudgment interest awarded under TEX.REV.CIV. STAT.ANN. art. 5069–1.03 (Vernon Supp. 1984) should have been calculated. It contends that under art. 5069–1.03 such interest should begin to run August 1, 1981, 30 days after appellant denied liability by filing its original answer. In support of its position appellant relies upon the following cases: *Rogers v. Aetna Casualty & Surety Co.*, 601 F.2d 840 (5th Cir.1979); *Liberty Mutual Insurance Co. v. General Insurance Corp.*, 517 S.W.2d 791 (Tex.Civ.App. —Tyler 1974, writ ref'd n.r.e.); *Fort Worth Lloyds v. Hale*, 405 S.W.2d 639 (Tex.Civ. App.—Amarillo 1966, writ ref'd n.r.e.). It is noted that none of the policies at issue in these cases contained a specified payment date.

*Hernandez*, involves a fire insurance policy which like the policy here required payment within 60 days after filing the Proof of Loss statement. *Hernandez*, 649 S.W.2d at 126. In *Hernandez*, the appellee failed to prove the date he filed his Proof of Loss, therefore, prejudgment interest ran from the time the insurance company denied liability. *Id.* The court, however, stated that if appellee had proved the date he filed his Proof of Loss he would have been entitled to interest beginning 60 days after that date since the policy by its terms required payment within 60 days.

In this case, it was undisputed that appellees filed their Proof of Loss with appellant on March 2, 1981. By the terms of the policy, nothing was payable until 60 days after appellant received appellees' Proof of

Loss. This 60-day waiting period was extended by agreement of the parties to May 4, 1981. Thus by the terms of the policy and following the reasoning in *Hernandez,* prejudgment interest was properly calculated from May 4, 1981.

Appellant also complains that the trial court was in error as to the amount of prejudgment interest awarded since the sum payable for additional living expenses was not ascertainable. It is well settled that a sum is ascertainable and prejudgment interest may be awarded where the *measure* of recovery, not necessarily the *amount* of recovery, is fixed by conditions existing at the time of injury. *Davidson v. Clearman,* 391 S.W.2d 48, 52 (Tex.1965); *Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11, 12 (1897). In *Miles v. Royal Indemnity Co.,* 589 S.W.2d 725 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.), the court found an "all risks" insurance policy upon which a boatowner relied was sufficient to constitute a contract ascertaining a sum payable within the meaning of art. 5069–1.-03. *Id.* at 736.

Accordingly, in the present case as in *Miles,* appellees' contract of insurance was sufficient to permit an award of prejudgment interest for appellees' additional living expenses. Point of error number twenty-one is overruled.

The judgment is affirmed.